# REPORTS

OF

## CASES ARGUED AND DETERMINED

## JUNE TERM, 1846.

## HARRIS v. MARTIN.

1. The County Court in adjusting the account of an administrator, or the settlement of his account, is not authorized to submit an issue to a jury, to determine whether his claims for compensation are proper, and it makes no difference that the estate is insolvent.

2. The court is authorized to allow compensation to an administrator for services performed by him as an attorney or solicitor, in the necessary and *bona fide* litigation for the benefit, or demanded by the necessities of the estate; but the amount of the compensation is to be ascertained, not by inquiring what such services are usually rated at, but by ascertaining what a prudent administrator would feel authorized to pay an attorney, taking in consideration all the circumstances of the estate, and under no circumstances to allow specific fees in each suit.

Writ of Error to the Orphans' Court at Montgomery.

So far as the nature of this proceeding can be ascertained from the transcript sent to this court, it may be thus stated :

Martin, as the administrator of the estate of Joseph Fitzpatrick, presented his accounts and vouchers to the Judge of the County Court for settlement, and thereupon, on the 9th

July, 1845, an order of publication was directed, for all persons interested in the estate to appear and show cause, on the 10th September, afterwards, why the said account should not be stated and allowed.

The matter was afterwards continued to the 12th September of the same year, when, as the judgment entry recites, the application came on to be heard—it appearing due publication had been made by the administrator, &c. and due notice having been given to the creditors of the said estate. Nathan Harris, Esq. on behalf of the creditors of said estate, appeared and contested said account and settlement; and at the suggestion of the parties, a jury was summoned, and issue being joined, was impannelled, and returned a verdict that they found the account as filed by the said administrator correct. Whereupon it was adjudged and decreed by the court, that the said account be allowed, and ordered of record.

A bill of exceptions is found in the transcript, which sets out, that on the day set apart for auditing and allowing the accounts of Abram Martin, administrator, one was presented, a copy of which is set out. The account exhibited is for various sums, amounting in all to $2465, as due the administrator, for defending suits by a number of individuals against him, as administrator of said estate.

Peter Harris, one of the creditors of said estate, objected to the allowance of said account, and thereupon a jury was impannelled to pass upon it.

Martin, the administrator, proved that he, as an attorney and counsellor at law and solicitor in equity, had rendered services in the cases stated in the account exhibited; that the personal skill and services of an attorney and solicitor were necessary; that the defences made and sustained were not within the ordinary duties of an administrator, could not have been conducted by any other than a lawyer, and that much of Martin's time, research and personal skill was required and exerted to the accomplishment of these objects; that the business of the estate was involved in great difficulty and obscurity, and the services so rendered were valuable and beneficial, and reasonably worth to the extent charged by Martin. He also proved that many other cases were prose-

Harris v. Martin.

cuted against the estate, in which he was unable to make a successful defence, and for which he made no charge, but confined his demand for compensation for personal services exclusively to cases in which the interest of the estate was advanced and benefitted by services rendered in his professional character, excepting one case only, which however presented such questions of doubt as made it proper to litigate.

On this state of facts, the court instructed the jury, that if they believed Martin had rendered services as an attorney and counsellor at law, and as a solicitor in equity, in suits brought against him as administrator of said estate, and that such services were beneficial to the estate, then he was entitled to retain out of the funds which he had received as administrator, whatever sum of money such services were reasonably worth, in addition to the commissions allowed for collecting and paying over the funds of the estate.

The contesting creditor excepted to the charge, and here assigns it as error.

I. W. HAYNE and J. E. BELSER, for the plaintiff in error, insisted—

1. The general rule, as shown by the English cases, is, that a trustee shall have no allowance for his trouble and loss of time. [29 vol. Law. Lib. 222.] If he employs persons of skill he will be allowed the payment, but will not be allowed to charge for the same services done by himself. [10 Law. Lib. 66 ; 24 Ib. 224 ; 14 Eng. Ch. 45 ; 17 Ib. 129 ; Ib. 362.]

2. When a solicitor, also a trustee, has been allowed compensation as such, the allowance depends on contract, or is directed by the will or deed. [14 Eng. Ch. 51 ; 17 Ib. 559 ; 5 Paige, 485 ; 8 Ib. 412 ; 9 Ib. 398.]

3. But even in the American courts, where the most liberal rule obtains, the trustee is only compensated for extra services, not within the scope of his duties as trustee, but not for those requiring official skill to perform them. [1 Johns. Ch. 27 ; Ib. 527 ; 2 Hawks. Law and Eq. 30 ; 2 Paige, 287 ; 6 Ib. 213.]

4. According to our own decisions, an administrator is en-

113

titled to a just compensation for his services rendered *in that capacity* and nothing more. [3 Por. 327 ; 9 Ib· 664 ; 5 Ala. 315 ; 6 Ib. 23 ; 7 Ib. 98.]

ELMORE, for the defendant in error, argued—

1. The doctrine of the English courts has never obtained in this country ; with us an administrator is entitled to reasonable compensation according to his services. [3 Porter, 327 ; 9 Ib. 667 ; 4 H. & M. 57, 69 ; 2 J. J. M. 205 ; 5 Ala. Rep. 314 ; 7 Ib. 517 ; Powell v. Powell, last term.] And under special circumstances, an extraordinary allowance will be given. [4 H. & M. 57 ; 5 Munf. 224 ; 3 Ib. 198 ; 1 Ib. 150 ; Hason v. Wallace, 1 Rich. Eq. 18.] If the administrator acts as overseer himself, he can have allowance for such services, or for any other act not specially in the scope of the trust. [Lee v. Lee. 6 G. & J. 316 ; 1 Rich. Eq. 18 ; 5 Ala. Rep. 314.]

2. The most proper rule seems to be the one adopted in South Carolina ; where a claim for services is preferred, it is referred to a jury. [1 Dess. 542 ; 4 Ib. 529 ; 1 McCord Ch. 4 ; 2 Ib. 213.]

3· It is evident however, that no *precise* rule can be laid down ; the principle recognized in a multitude of cases is, that the allowance shall be according to the necessity and services. [9 S. & R. 209 ; 2 Lomax on Ex. 327 ; 9 Porter, 667 ; 15 Pick. 484 ; 12 Ib. 183 ; 8 N. Hamp. 444 ; 5 Dana, 42 ; 3 Harr. Ch. 68 ; 5 Ala. 314 ; 16 Mass. 228 ; 11 Pick. 124 ; 5 Monroe, 65 ; 1 Pirtle's Dig. 430, § 110.]

4. The rule of no compensation seems local to England, and may have arisen from the idea that legacies to executors were given as a remuneration. [4 Vesey, 74 ; 2 Atk. 58.] However this may be, compensation has been allowed them for beneficial services. [2 Swan. 453 ; Lewen on Trusts, 227 ; Malcolm v. O'Callaghan, 3 M. & C. 58 ; Carmichael v. Wilson, 12 E. C. 610 ; 2 Mllooy, 537.]

GOLDTHWAITE, J.—1. In the brief submitted since the argument, it is conceded this case, so far as the issue is connected with it, cannot be distinguished from other cases recently decided. We are clear in that opinion ; it is the in-

solvency of the estate which the creditors are allowed to contest with the administrator, in the first instance, and when that is ascertained or adjudged, the administrator or any creditor may contest the claim of any other creditor, whose claim is filed in the manner required by the act. [Dig. 192, § 4; 194, § 11.[

It is quite evident the demand of the administrator for compensation for settling the estate, is not a claim against the estate, in the sense of either of the sections referred to. That is a matter to be ascertained and decreed by the court, exercising its general and ordinary functions. As the issue sent to the jury was irregular, as settled in several cases at January term, 1846, this writ of error must be dismissed on the authority of that decision.

2. As the question of compensation has been so fully argued, and as it must arise again when the matter is properly before the court below, it will not be improper now to ascertain what are the general principles by which allowances of this nature are to be governed.

It is unnecessary, in this instance, to go into an extended examination of cases, either English or American on this subject, as they are chiefly collated in the treatises upon trusts; it is perhaps sufficient to say, that in the English courts such allowances are discountenanced on the supposition that the acceptance of a trust is voluntary, and that allowances for services might induce the trustee to lessen the estate by pretended charges, which, under a more cautious administration might be wholly avoided. In the American courts generally, a different rule obtains, and allowances are not refused, although they are scrutinized with jealous watchfulness. [Bethea v. McCall, 5 Ala. Rep. 308; Rathbon v. Colter, 15 Pick. 471; Longley v. Hall, 11 Ib. 120; 2 Lomax on Ex. 327; Wend. v. Lee, 5 Mon. 50.] The same scrutiny is exercised over the allowances made to trustees in the English courts, whenever the general rule is departed from, and compensation is given for loss of time and trouble. [Lewin on Trusts, 441.] With us it is the usual and common practice to allow executors, administrators and guardians, a *per centage* upon the amount of the receipts and disbursements as a compensation for the performance of the trust. This *per centage* has never

Harris v. Martin.

been fixed by statute, and until some specific rule is declared upon the subject, it is evident each case must be governed by its peculiar circumstances. It is apparent, however, the *quantum* of trouble, and loss of time, is not the only matter to be considered, as the settlement of an estate of $500, may involve as much difficulty as one of $50,000. The compensation must also, to a great extent be controlled by the amount of the estate. It is evident enough, from a consideration of all the cases, that the courts do not proceed, when making. the allowance to a trustee, upon the principle of specific compensation for services rendered, or to be rendered. The usual course of the Court of Chancery, is to refer it to a Master to settle the allowance. [Marshall v. Halloway, 2 Swanston's Rep. 432; Brown v. Letton, 1 P. Williams Reports, 140.] These are the general principles applicable to allowances, and we can perceive no reason why one who is not a mere voluntary trustee, appointed by will or deed, and is also an attorney, shall not be allowed a reasonable compensation for his services in the latter capacity, when such have been necessarily and *bona fide* rendered for the benefit, or called into use by the necessities of the estate. But we do not think the amount of compensation is to be ascertained by inquiring what such services would usually be rated at. In the inquiry, it would be more proper for the court to ascertain what a prudent individual, invested with the functions of administrator, would feel authorized to pay an attorney, taking into consideration all the circumstances of the estate. These rules will probably suffice for the correct determination of this cause, when it shall be again presented to the County Judge.

Writ of error dismissed.