## GOULD *vs.* HAYS, ET AL.

1. On the taking of an account before a master in chancery, to ascertain the compensation to which an executor is entitled, a witness cannot be asked, after the pleadings and depositions in the cause have been read in his hearing, "to state, from his own knowledge, and the facts disclosed by the pleadings and evidence, what would be a reasonable compensation to the executor."

2. Compensation, when applied to trustees, means but little (if anything) more than a liberal indemnity. As a general rule, in making allowances to executors, whether under the act of 1841, or without reference to that act, the court should look to the loss of time, trouble, risk and responsibility which are demanded by the nature of the trust, and actually incurred, and allow such a remuneration as a prudent and just man would, under such circumstances, consider a fair compensation, without, however, being governed by the business charges usually made for the like services.

APPEAL from the Chancery Court of Greene.
Heard before the Hon. E. D. TOWNES.

THIS bill was filed by the children of George Hays, deceased, against William P. Gould, his executor ; seeking an account of the trust, and charging the executor with gross negligence and mismanagement in regard to it. At the June term, 1851, the decree of the former chancellor was reversed, and the cause remanded for further proceedings in accordance with the principles then laid down.—See 19 Ala. 438. A reference to the master of the matters of account was afterwards awarded in the court below, and the case now comes back on appeal from the decision of the chancellor, on the points presented by exceptions to the master's report.

S. F. HALE and F. S. LYON, for the appellant :
The only question now presented in this cause, is, as to the amount of compensation to be awarded to the executor for his services. His right to reasonable and just compensation has already been settled by this court.—Gould v. Hays *et al.*, 19 Ala. 438. Under the decision remanding the cause, and the decree of the chancellor directing the master to take evi-

Gould v. Hays et al.

dence and report a reasonable and just allowance to the executor for his services, the plaintiff in error insists the rules of evidence have been violated and disregarded, and manifest injustice done him. In taking the account the master ruled, that no witness could be allowed to testify as to the quantum of compensation, except upon his personal knowledge of "the amount of labor performed by the executor, the responsibility involved, and the value of the estate" ; that no inspection of the bond of the executor, and the inventory and appraisement of the estate, showing the extent and value of the property managed, would authorize a witness to say what would be a reasonable and just compensation.

Let the case be tested by this rigid rule, and how does it stand? Only nine of the witnesses whose testimony was before the master came within his rule : Thomas Cauffield, Henry Cauffield, Madison Johnson, N. G. Friend, R. Ridgeway, Joseph W. Hall and Caswell Eady, for plaintiff in error, and John C. Johnson, for defendant, testified from their own knowledge of the facts ; they were of the neighborhood, acquainted with the business attended to by the executor, and had a knoweldge of the "labor performed by him, the responsibility involved, and the value of the estate" ; they were equally credible, and had an equal opportunity of knowing the facts ; the average of their testimony established an annual compensation of $1786. The evidence of the eight witnesses first named, established an annual compensation of $1,857 50 ; the evidence of the one last named established an annual compensation of $1166. The master, in his report to which exception was taken, allowed an average annual amount of $1,170 27, in the form of commissions for the first three years, and an annual salary afterwards. The inquiry then presents itself, under what rule did the master attain his conclusion? Not from the testimony of any of the witnesses, because from that a different result is shown. Had he, then, a right to depart from the testimony, and act upon his supposed private knowledge of facts? The law says not. A master, in taking an account, cannot act upon facts in his own knowledge.—Bissell v. Bozman, 2 Dev. Eq. 229. The rules of evidence are the same in courts of equity as in courts of law.—2 Dan. Ch. Pr., 1031, note 1 ; 2 Bibb 5 ; ib. 28 ;

17 Mass. 303 ; 4 Monroe 20 ; 1 Johns. Ch. 425. All circumstances being equal, as to the knowledge and standing of witnesses, the preponderance of numbers is entitled to the advantage.—Part 1, Cowen & Hill's Notes ; 1 Stark. Ev. 465. Upon the mere question then, as to the weight of testimony, the master's report would be set aside.

This court can, without remanding the cause, or causing the account to be referred back to the master, settle the true amount of compensation to the executor, upon the evidence reported. Upon this point, see Davis v. Roberts, 1 Smedes & Marshall 543.

Where, in an inquiry before the master on a matter of account, several witnesses are examined and give different estimates as to value or price, and he can make no discrimination among them, either as to their integrity, intelligence or opportunities of knowledge, or judgment, he may safely assume as his guide an average of their different estimates.—Morrison v. McLeod, 2 Ired. Eq. 108.

JOHN W. WOMACK and N. HARRIS, *contra :*

In determining the compensation to be allowed to an executor, regard must be had to the nature and extent of the estate, the duties which he is required to perform, the manner in which he has discharged them, and the result of his management to the estate. In this case, the appellant acted as executor nearly six years ; the estate consisted of a large body of lands, embracing two plantations in this State and other lands in Mississippi, and about one hundred and sixty negroes; one of these plantations was situated about one mile from the appellant's residence, and the other about three miles ; and the record nowhere shows that he ever went to Mississippi on account of the lands there situated. The estate was a large one, but it was not of that character which required extraordinary services from the executor, nor even his absence from home. The duties required of him were, to exercise such superintendence over the plantations and slaves as would make them most valuable to the appellees,—to see that fit and proper persons were employed as overseers ; that the slaves were provided with suitable houses, food, and clothing ; and that the crops were gathered and sold, and

Gould v. Hays et al.

the proceeds applied to the payment of the expenses and other proper debts and charges against the estate. The record tends to show that he did not give the same care and attention to the plantations of the estate, that a prudent man would have given to his own : he seldom visited the plantations ; he employed overseers at the highest rates ; the condition of the cabins is proved to have been bad, and there was a scarcity of blankets ; and by his management the estate lost $1826 by Toulmin.

To what compensation is an executor entitled, whose management has resulted so unprofitably to the estate ? The appellees insist, that the register and chancellor allowed as high a rate of compensation as was justified either by the testimony in the case, or the result of the executor's management to the estate. The testimony of McAlpin and Fambro was entitled to more weight than that of any other witnesses, because they had both been engaged in the management of estates requiring much more care and attention than that of Hays, and were therefore better qualified to put a proper estimate upon the value of the appellant's services, and the amount of his compensation, than the other witnesses ; and they estimate the executor's compensation at $2\frac{1}{2}$ per cent. on receipts, and the same on disbursements. But, even if the rate of compensation fixed by them should not be adopted, still the amount fixed by the court below was a fair average compensation as fixed by all the witnesses. The usual commissions allowed to executors are, $2\frac{1}{2}$ per cent. on the receipts, and the same on the disbursements ; and this is deemed a sufficient compensation for their ordinary services (2 Lomax on Executors, p. 329, § 27) ; and it is only where extraordinary trouble has been imposed, and extraordinary risk incurred, that a higher rate has been allowed.—Fitzgerald v. Jones, 1 Munf. 156 ; Ashurst v. Ashurst, 13 Ala. 786 ; O'Neil v. Donnell, 9 *ib*. 737. But in this case, there is no evidence that the executor was put to any extraordinary trouble, or that he incurred any extraordinary risk.

GOLDTHWAITE, J.—This case comes here on appeal from the chancellor, confirming the report of the master, made in relation to the compensation to be allowed the appellant

as the executor of George Hays ; and the only questions presented arise on the action of the chancellor in overruling the exceptions taken to this report.

The appellant qualified as executor on the 22d Jan'y, 1839, and continued to act in that capacity until the 4th of January, 1845; and when this case was last before this court (19 Ala. 438), it was held, that the appellant was entitled to compensation as executor,—that for the services performed by him previously to the act of 1841 (Clay's Digest, 228, § 39) the amount was to be determined by the law then existing, and that after that period he was entitled to an annual sum under the act last referred to. The order of reference directed the master to allow such compensation to the appellant as he should deem reasonable and right for his services as executor during the three first years, by commissions on the receipts and disbursements made by him during those years ; and for the residue of the time which he had charge of the estate, such an annual compensation for his services as should be reasonable, having regard to the amount of labor performed, the responsibility incurred, and the value of the estate ; and by the terms of the order the register was authorized to examine witnesses to establish the extent of the services, as also to the value of the estate, or any other matter pertinent to the inquiry, and also to look to the written testimony in the case. A great number of witnesses were examined, and the register reported as the compensation of the appellant : for the year 1839, 15 per cent. on receipts and disbursements ; for the year 1840, 5 per cent. on the receipts and disbursements ; for the year 1841, 5 per cent. on the receipts, and 2½ per cent. on the disbursements ; for the year 1842, an annual compensation of $1250 ; for the year 1843, $1000; for the year 1844, $1000.

On the taking of the account, and after certain of the witnesses had testified as to their knowledge of the value of the estate, and the services rendered by the executor, and after the pleadings in the cause had been read in their hearing, as also the depositions of certain other witnesses as to the value and management of the estate, they were asked by the appellant to state from their own knowledge, and the facts disclosed by the pleadings and evidence, what would be a rea-

sonable compensation to the executor ; which question, being objected to, was ruled out by the master, and his action in this respect was made the ground of an exception to his report ; which exception was overruled by the chancellor; and as we think correctly, for the reason that it called upon the witnesses to pronounce upon the facts disclosed by the pleadings and evidence in the cause. Conceding for argument's sake, that the opinion of the witnesses upon the facts established would have been evidence ; still the question propounded rendered it necessary for the witnesses, before giving their opinion, to determine what facts were proved, thus devolving upon them an inquiry which the master alone could determine. In the shape in which it was put, the question was manifestly improper, and the objection to it was properly sustained.

The second exception to the report was based upon the question propounded to the witnesses Cox and Collins, which was objected to by the appellant ; but we consider it unnecessary to notice this exception, for the reason, that in arriving at the conclusion we have attained as to the compensation allowed, we have excluded the testimony of these witnesses, which is not entitled to the slightest weight, as neither of them states any fact which could lead the mind to any definite or satisfactory conclusion as to the correctness of the opinion they give. Each of them expressly states that he knew nothing whatever as to the extent or the value of the services of the executor, nor does either of them appear to have any knowledge as to the management of the estate by him. Their opinion, therefore, as to the nature and extent of services of which they have no knowledge, is entitled to no consideration whatever.

The other exceptions attack the conclusions of the register upon the evidence, and present simply the question, as to whether the testimony in the cause, and that adduced before the register, proved that the appellant was entitled to a greater amount of compensation than was allowed.

The practice which has obtained in this State as to compensating executors and administrators, in cases which do not fall within the act of 1841, has been by a percentage on the receipts and disbursements; and the principle to be extracted

from the decisions which this court has made upon that subject, is, that there is no fixed or uniform rate or limit to this compensation, but that the amount varies according to the circumstances of each particular case.—Harris v. Martin, 9 Ala. 895 ; Magee v. Copperthwaite, 10 *ib.* 966 ; Ashurst v. Ashurst, 13 *ib.* 781. The services actually rendered, considered with reference to the amount of trouble and the loss of time, and whether they were required or proper to be performed in the management of the trust,—the responsibility involved, measured by the condition, character, and value of the estate, —may very properly enter into the question of compensation; but, as courts, in making allowances to trustees, do not proceed on the principle of specific compensation for services rendered, (Harris v. Martin, *supra,*) care should be taken in fixing the amount, that trusts of this character should not become money-making occupations ; and such would be the inevitable result, if services rendered by trustees were to be estimated according to the rules obtaining between man and man when dealing with each other at arm's length. Compensation, when applied to trustees, means but little, if anything, more than a liberal indemnity. We should much prefer a fixed and definite standard, applicable to all cases, for the reason, that it would be less subject to abuse ; but no such standard has been fixed by law, and the only principles we can lay down for the regulation of the compensation, are those which we consider deducible from the authorities to which we have referred. The court, in making the allowance, is to look to the loss of time, trouble, risk, and responsibility, which are demanded by the nature of the trust, and which is actually incurred, and to allow the trustee such a remuneration as a prudent and just man would, in view of these circumstances, consider a fair compensation, without, however, being governed by the business charges usually made for the like services ; and the rule, as a general one, equally applies to all allowances made to executors, whether under the act of 1841, or without reference to that statute.

Having ascertained the principles which must govern the question under consideration, we deem it unnecessary to go into the evidence in detail. To do so would settle no legal question, and would be but a useless commentary upon the

facts. It is enough to say, that after a careful and thorough examination of the whole evidence as found in the record, except the testimony of the two witnesses before referred to, we are satisfied that the allowance made was, under the law as we have stated it, sufficient.

The decree is affirmed, the appellant paying the costs of this court.