# Griffin *v.* Pringle.

*Bill in Equity by Administrator of Debtor and Creditor Estates, for Settlement and Distribution.*

1. *Repugnant provisions in will.*—When a will contains provisions which are irreconcilably repugnant, the later clause must prevail over the prior, and the general intent must prevail over a particular intent.

2. *Will construed as creating estate for life in widow and son, charged with support of daughters, and intestacy as to fee.*—A will contained the following provisions: "I give, devise, and bequeath, unto my beloved wife and son George all my real and personal estate, to support them during their natural lives; and immediately after my decease, it is also my desire that my son Alexander take the management and control of the negroes and plantation. for his mother, and brothers, and sisters; and it is also my desire that Sarah, Nancy, and Mary" [testator's daughters] "have their support. It is also my desire that Thomas work with his brother Alexander in helping to make a support for the family, and to assist him in paying the debts of the estate. I also constitute, nominate, and appoint Alexander and John as my executors." *Held*, that the widow and George took an estate for life in all the property, as tenants in common, charged with the support of the three daughters out of the income; that the trust to manage and control, confided to Alexander, continued only during the existence of the estate for life; and that there was an intestacy as to the reversion of the entire estate.

VOL. LVI.

[Griffin v. Pringle.]

3. *Diligence required of trustee ; measure of.* —The law does not exact infalli-bility from a trustee, nor hold him accountable for mere errors of judgment: good faith, integrity of purpose, and that degree of diligence which a man of ordinary prudence bestows upon his own affairs, are the measure of his duty and responsibility.

4. *Compensation and reimbursement of trustee.*—A trustee is entitled to rea-sonable compensation for his services and risks, and has a lien on the trust property for the reimbursement of his expenses legitimately incurred in the execution of the trust.

5. *Settlement of debtor and creditor estates by common administrator.*—When the same person is the administrator of the estates of two deceased persons, and one estate is indebted to the other, the Chancery Court alone has jurisdic-tion of their settlement.

APPEAL from the Chancery Court of Lee.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 11th June, 1874, by Andrew B. Griffin, against the heirs at law and dis-tributees of the estate of James Pringle, deceased, who died in Russell county (in that portion now embraced in Lee county), in 1854; and whose last will and testament, which was there duly proved and admitted to probate, was in these words : "As to such worldly estate as it hath pleased God to bless me with in this life, I give, devise, and bequeath, unto my beloved wife and son, George Pringle, all my real and personal estate, such as land and negroes, stock of all kinds, hogs, cows, horses, mules, and all the plantation tools, *for* to support them during their natural lives; and immedi-ately after my decease, it is also my desire that my son, Alex-ander Pringle, take the management and control of the negroes and plantation, for his mother, and brothers, and sisters; and it is also my desire that Sarah K. Pringle, Nancy A. Pringle, and Mary E. Pringle have their support. It is my desire, also, that Thomas W. Pringle work with his brother, Alexander Pringle, in helping to make a support for the family, and to assist him in paying the debts of the estate. I also constitute, nominate, and appoint Alexander Pringle and John G. Pringle, as my executors."

The bill contained only six paragraphs, in which the fol-lowing facts were alleged : 1. The death of said James Prin-gle, and the probate of his last will and testament, a copy of which was made an exhibit. 2. That John G. Pringle, one of the persons named in the will as executors, was a non-resident ; that Alexander Pringle alone qualified as executor, and, in the execution of the powers conferred by the will, "carried on farming, operations on the testator's lands, and thereby made and provided a support and maintenance for the testator's family, as provided by said will, and thereby and therefor contracted the following debts," specifying the names of the creditors and the amounts of their respective

debts; "all of which were articles for the support of the family, and to carry on the said farming operations, and constitute a valid charge on said testator's estate, but for which the estate of said Alexander Pringle is liable." 3. That the testator's estate consisted of certain lands, which were particularly described. 4. That Alexander Pringle died in 1872, not having fully executed said will, and the administration of said estate having been removed to Lee county; and that the complainant was duly appointed administrator of his estate, and also administrator *de bonis non*, with the will annexed, of said James Pringle, by the Probate Court of Lee county. 5. That the widow of said testator, and his son George, had both departed this life, the time of their respective deaths not being stated; and that the heirs and distributees of said testator's estate are: "John G. Pringle, over twenty-one years old, residing in Savannah, Chatham county, Georgia; Sarah K. Pringle, Nancy A. Pringle, and Mary Pringle, all over twenty-one years of age, and all residing in said county of Lee; Thomas G. Pringle, of unsound mind, over twenty-one years old, and residing in Lee county; and Avarilla Duncan, John A. Duncan, George W. Duncan, and Camilla Duncan, all over twenty-one years old, and residing in Cass county, Texas, post-office unknown." 6. The prayer of the bill was, that the court would, "on final hearing, declare that said debts constitute a valid lien and charge upon the said testator's estate, mentioned in the third paragraph of this bill, and the same be sold, and the said debts be paid and satisfied; and send an order to the Hon. Wilson Williams, the probate judge of said county, directing him to send all the papers pertaining to said testator's estate to this honorable court, there to be further and fully administered; and for other and further relief," &c.

A joint answer to the bill was filed by Sarah, Nancy, and Mary Pringle, in which was incorporated a demurrer, assigning the following grounds: "1st, that said bill has no equity; 2d, that it shows no right in the plaintiff to sue for a sale of the lands of James Pringle's estate; 3d, that it shows no right in Alexander Pringle to charge the said lands; 4th, that it states no facts showing that he did so, or endeavored to do so; 5th, that no account is rendered between said Alexander and the estate said to be in his charge, so as to enable the court to strike a balance between him and the trust estate; 6th, that the bill does not show the character in which the plaintiff sues."

An amended bill was afterwards filed, alleging "that said Alexander Pringle, in executing said trust, expended a large sum of money, which is a proper charge on said estate; that

[Griffin v. Pringle.]

said expenditure was reasonable, just, and necessary for the execution of said trust; that said Alexander Pringle devoted his personal services and time to the execution of said trust, for eighteen years; that said services constitute a valid charge on said trust estate, and are reasonably worth the sum of $2,500; and that complainant, as administrator of said Alexander Pringle, or James Pringle, deceased, has no effects whereby to repay said expenditures, and to pay for said services." The amended bill prayed, "in addition to the relief hereintofore prayed," that the court would "declare that said expenditures and charges for personal services constitute a valid charge on said estate; that a reference be had with the register, as master, to determine and report what sum said Alexander Pringle did so expend in the execution of said trust, and what sum his said personal services to said trust estate are justly worth."

The said Sarah, Nancy, and Mary Pringle, answering the amended bill, demurred to it, on the ground of a variance and inconsistency between it and the original bill; and to the bills original and amended, on the grounds of multifariousness, uncertainty as to the character in which the plaintiff sued, lapse of time and staleness of the demand, and want of equity. The chancellor sustained the demurrer, and dismissed the bill, for want of equity; and his decree is now assigned as error.

H. C. LINDSEY, for appellant.—The original bill stated the necessary facts, and showed the relation which the complainant sustained to them; and even if it was doubtful whether he sued individually, or as administrator of Alexander Pringle, the doubt was removed by the amended bill, which clearly discloses his representative character. That such an amendment is allowable, see *Crimm v. Crawford*, 29 Ala. 623; *Agee v. Williams*, 30 Ala. 636; *Harris v. Plant*, 31 Ala. 638; *Watson v. Collins*, 37 Ala. 587. As to the executor's right to be reimbursed for his expenditures, incurred in the performance of the duties imposed on him by the will, and for his personal services, see Perry on Trusts, §§ 473, 485; *Chambers v. Mauldin*, 4 Ala. 447.

GEO. W. HOOPER, contra, cited *Lyon v. Hays*, 30 Ala. 430; *Mulhall v. Williams*, 32 Ala. 489; *Askew v. Myrick*, 54 Ala. 30.

STONE, J.—James Pringle died, testate, in 1854. He left surviving him a widow, and the following children: John G., Alexander, Thomas W., George, Sarah K., Nancy A., and Mary Pringle; also, probably, another daughter, or children

of a daughter, named Duncan. The will is an anomaly. The property consisted of lands, slaves, stock, plantation implements, and, doubtless, household furniture. The language of the will is: "I give, devise, and bequeath, unto my beloved wife and son, George Pringle, all my real and personal estate, to support them during their natural lives; and immediate after my decease, it is also my desire that my son, Alexander Pringle, take the management and control of the negroes and plantation, for his mother, and brothers, and sisters; and it is also my desire that Sarah K. Pringle, Nancy A. Pringle, and Mary E. Pringle, have their support. It is also my desire that Thomas W. Pringle work with his brother, Alexander Pringle, in helping to make a support for the family, and to assist him in paying the debts of the estate. I also constitute, nominate, and appoint Alexander Pringle and John G. Pringle, my executors." Alexander Pringle alone qualified, and took upon himself the trust.

1. In construing a will, it is our duty to consult the whole will, and give effect to the expressed intention of the testator, when we can gather it, and such intention does not violate any rule of law. Clauses apparently conflicting must be harmonized, if possible; and if they cannot be harmonized, then the later clause will prevail over the earlier, as being the latest expression of the testator's will; and a general intent will prevail over a particular intent, if irreconcilably repugnant to it.—Jarman's 7th canon of construction, 2 Jar. on Wills, 741; 1 Redf. on Wills, 420; *Walker v. Walker*, 17 Ala. 396; *Miller v. Flournoy*, 26 Ala. 724; *Gibson v. Land*, 27 Ala. 117; *Pace v. Bonner*, 27 Ala. 307.

2. The proper construction of the will before us is no easy task. Part of it is devoted to bequests that are beneficial; while, so far as Alexander and Thomas W. Pringle are concerned, it imposes only burdens. Whether they are to share in the income of the property is no where expressed. We have no hesitation in saying, that a life-estate in the title to all the property was thereby vested in the widow and George Pringle, while the management and control of the negroes and plantation were put in the hands of Alexander Pringle. This is said to be "for his mother, brothers, and sisters." What is meant by this, it is difficult to say. It probably depends on the then condition of his family; to what extent scattered and provided for, and constituting a part of his family. The next clause rather confuses, than sheds any light on this. It directs that the three daughters, Sarah K., Nancy A., and Mary E. Pringle have their support; evidently out of the property, or its income: the latter, if sufficient. To go beyond the latter, would trench on the life-estate to the

widow and his son George; therefore, we hold that it must come out of the income. This is made a charge on the life-estate.

But a difficulty arises here. These three females are sisters of Alexander Pringle, and are embraced in the trust confided to him, to manage and control the property "for his mother, brothers, and sisters." To what extent for them? If for their present support, then there was no use for the later expression, that they were to have their support; and, in this connection, it becomes material to inquire, what are the meaning and object of the testator, when he directs that, immediately after his decease, "Alexander Pringle take the management and control [of the property] for his mother, and brothers, and sisters?" In the absence of averment of the then residence of the different members of the family, we are not able to reconcile and give operation to the several clauses of the will. We do not hesitate to declare, that the support of the three named females was made a charge on the life-estate, being the usufruct of the property, which the will gives to the widow and George Pringle. We hold, further, that the will only disposes of a life-estate to the widow and George, who, under our statute, must be held to have taken as tenants in common. The reversion of the entire estate was left undisposed of, and, as to that, the testator died intestate. And we hold, too, that the trust to manage and control, confided to Alexander under the will, continued only during the life-estate; and that, after that, he was remitted to his powers as executor only.

3. The bill avers, that Alexander Pringle entered upon, and discharged the duty of managing and controlling the estate; and there is nothing in the bill tending to show that he did not do it faithfully. We judicially know, as a matter of public history, that slaves were emancipated by the close of the war, in 1865. Mr. Pringle's estate consisted of a plantation and slaves. The chances of working the plantation successfully and profitably were materially diminished by that event. The will shows that the testator, at the time of his death, owed debts, but their amounts are not shown. Under these circumstances, and in the troubles incident to the war and its results, it is not surprising that the managing trustee, with the purest intentions and strictest economy, would sometimes find it necessary to incur liabilities in the execution of the trust, and to save the trust property. The law does not exact infallibility from a trustee, nor hold him accountable for errors of judgment, if he act in good faith. Men of ordinary prudence, many of them, fell into serious errors, and suffered grievous losses, in their early experi-

ments with freed laborers.   It was Alexander Pringle's duty
to manage and control the property; and the law exacted
from him only integrity of purpose, and that degree of dili-
gence which an ordinarily prudent man bestows about his
own affairs.   Bringing to the service this good faith, and this
measure of diligence, the law does not hold him accountable
for his misadventures.—See *Gould v. Hayes*, 19 Ala. 238;
*Henderson v. Simmons*, 33 Ala. 291; *Baldwin v. Hatchett*, at
the present term; Tiff. & Bull. on Trusts, 599.

4. In Alabama, and generally in the United States, trus-
tees are entitled to reasonable compensation for their services
and risks.— *Gould v. Hayes*, 25 Ala. 432; *Bendall v. Bendall*,
24 Ala. 306; Tiff. & Bull. on Trusts, 858.   "The expenses of
a trustee, in the execution of a trust, are a lien upon the
estate; and he will not be compelled to part with the prop-
erty, until his disbursements are repaid."—Perry on Trusts,
§§ 907, 915.   "A trustee may reimburse himself, for money
advanced in good faith for the benefit of the *cestui que trust*,
or for the protection of the property, or for his own protec-
tion in the management of the trust.   It is a rule, that the
*cestui que trust* ought to save the trustee harmless, where the
trustee has honestly, fairly, and without possibility of gain
to himself, paid out money for the benefit of the *cestui que
trust*."—Perry on Trusts, § 485; *Altimus v. Elliott*, 2 Penn.
St. 62; *Barlow v. Grant*, 2 Vernon, 255; *Attorney-General v.
Mayor*, 2 Myl. & Cr. 406; *Attorney-General v. Pearson*, 2
Coll. 581; *Iredell v. Langston*, 1 Dev. Eq. 392; *Balsh v. Hy-
ham*, 2 Pr. Williams, 453.

5. In the present bill, it is not shown when Mrs. Pringle
and George Pringle died; and hence we cannot tell when the
special trust to manage and control ceased.   There are many
other defects in the bill, among which we mention a failure
to set forth, either generally or specially, how Alexander
Pringle administered the trust, or accounted for the income;
whether the debts described in the bill were contracted be-
fore or after the termination of the life-estate, and the neces-
sity or reason for contracting them, and on what considera-
tion.   There is no averment, negativing the receipt and use
by Alexander of the income of the estate, or some part
thereof, as compensation to himself; and no account rendered,
or denial of liability to account, so as to show the trust fund
in fact owes said Alexander's estate.   Nor is there any aver-
ment, or prayer, offering to settle said Alexander's executor-
ship or trust, or praying, for that purpose, to transfer the
settlement to the Chancery Court, the only court having juris-
diction to make the settlement between the two estates, of

each of which the same person is administrator.—*Bruce v. Strickland*, 47 Ala. 192; *Hays v. Cockrell*, 41 Ala. 75.

What we have said above is in great ignorance of the real merits of the present controversy. We have only considered the bill, and amended bill, as they and the demurrers are all of the pleadings that are properly before us. It may be that this family lived and labored together for their common support and benefit, with no thought or intention, on the part of any member thereof, to make a charge for the same. The very long period such a relation appears to have been kept up, gives, at least, plausibility to this theory. If such was the case, no allowance for such services should be made. We do not affirm there is a liability for the other debts, those set forth in the original bill. The averments of the bill, as we have shown, are too meagre to justify us in hazarding an opinion.

The bill is fatally defective, and the chancellor did not err in dismissing it; but, inasmuch as it is possible the complainant may be entitled to some relief, we will so modify the decree as to make it a dismissal without prejudice.

Affirmed, and bill dismissed without prejudice.