# Woodruff *v.* Snedecor.

*Bill in Equity for Settlement of Trust.*

68   437<br>135   595

1. *Compensation of trustee.*—Where the nature and character of the trust and trust property show that, in the execution of his duties, rather unusual trouble and annoyance would be encountered by the trustee, five per cent. on the amount of his receipts and disbursements each should be allowed him as compensation.

2. *Diligence required of trustee.*—A trustee is required to exercise, in the discharge of the duties of the trust, that degree of diligence which a man of ordinary prudence bestows on his own similar business interests; and when he does this, he acquits himself of blame.

3. *Counsel fees; when divided between trustee and cestuis que trust.*—On bill filed in this case for the settlement of a trust, by the beneficiaries

[Woodruff v. Snedecor.]

against the trustee, the counsel fees were ordered to be divided equally between the trust fund and the trustee personally, under the rule declared in *Smith v. Kennard's Executors*, 38 Ala. 695; that rule being, that counsel fees would be divided when both parties were equally at fault in the litigation

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 18th March, 1879, by Jonathan Bliss (suing for the use of F. P. Snedecor) and others, against Zoromba W. Woodruff and others, for the final settlement of a trust; said Woodruff being the trustee, and the complainants, with some of the defendants, being the parties beneficially interested. The trust originated in this way: In October, 1867, Bliss, Mooring and others, judgment creditors of T. D. Bell and R. G. McMahon, individually and as partners, sued out executions on their several judgments, which were levied on several tracts of land and other property, being all the property supposed to belong to said defendants, or either of them; and some of this property being claimed as exempt by said defendants, and other portions being claimed by the wife of said McMahon as belonging to her individually, all the parties in interest entered into a written agreement prior to the sale, which was reduced to writing, and signed by them or their attorneys, in these words: "For good and valuable consideration, the undersigned, plaintiffs in the foregoing judgments, and the undersigned attorneys for said plaintiffs, and the undersigned defendants in said judgments, and W. O. Winston as agent for A. A. Winston, agree as follows: There are executions on said judgments now in the hands of the sheriff of Sumter county, and he has levied said executions on all the property which is subject to levy, and has advertised said property to be sold this day. Said defendants waive any irregularity in, or suspension of said sale. It is agreed by all parties interested in said executions and property, that James A. Mooring shall buy any and all of said property which shall not sell for a reasonably fair price, and hold it as trustee under this agreement; that he shall rent out the property purchased, on such terms as he shall think best, until favorable opportunities occur to sell it for reasonably fair prices; that he shall apply three-fourths of the rents towards the payment of the amounts that shall be due on said judgments ratably. and shall pay the other fourth to Mrs. E. R. McMahon, if living, or to her children if she should be dead. The proceeds of any sales of said property shall also be applied by said Mooring towards the payment of the amounts that shall be due on said judgments ratably. The amounts which

[Woodruff v. Snedecor.]

shall be due on said judgments shall be paid, or all of said property shall be sold, and the proceeds applied to their payment, within three years from this day. If the rents and profits of said property, applied on said judgments, and the proceeds of sale of said property, and other payments which shall be made on said judgments, should discharge the amounts due on said judgments, within said three years, all of said property, or the proceeds thereof which shall remain, shall be delivered or paid to the said Mrs. McMahon, if living, or to her children, if she should be dead, as her or their own property, and as her or their own separate estate under the Code of Alabama. In applying rents, proceeds of sale or payments, to said judgments, interest is to be computed without rests, so that there shall be no partial compounding of interest by reason of such application. In case said Mooring should die before the provisions of this agreement shall be fully executed, or if, for any cause, he shall fail or refuse to act, as herein required, a majority of the plaintiffs in said judgments may select and appoint another trustee, who, when selected and appointed, shall have all the powers, and shall perform all the duties hereby conferred on and required of said Mooring; and the said creditors, in either event above specified, and in the event any other trustee selected and appointed by them should die, or fail or refuse to act, may select and appoint, from time to time, as occasion may require. Nothing herein contained shall discharge any surety or indorser on any of the debts on which said judgments were recovered, nor prevent any of said creditors from making the money out of such surety or indorser, if he or they should choose to do so ; but, in case the money should be made out of any such surety or indorser, such surety or indorser shall stand in the place of the creditor, so far as the provisions of this agreement are concerned, and shall have all the rights under this agreement which such creditor would have had if he had not so made his money out of such surety or indorser. If any more formal agreement than this, or any conveyance whatever, shall at any time be deemed necessary to carry out the general intentions herein expressed, it shall be executed, as the counsel of all parties, or the parties themselves, shall agree. In case the property levied upon, and which shall be sold by the sheriff under said executions, shall not be sufficient to pay the amounts due on said judgments, and all costs and commissions, as to the balance which shall be due on each of said judgments no lien shall be lost, and executions may be taken out, at the option of each of said plaintiffs, from time to time, as they may choose."

[Woodruff v. Snedecor.]

The property was sold by the sheriff, under the levy of the several executions, on the 13th, 14th, and 15th January, 1868; Mooring becoming the purchaser, pursuant to this agreement, of the greater portion, and receiving the sheriff's deed for all the real estate knocked down to him. He took possession of the property conveyed to him, rented it out, collected rents, and continued to discharge the duties of the trust until some time during the year 1872, when he resigned; and Z W. Woodruff was thereupon elected, by the parties in interest, as his successor in the trust. On the 19th February, 1873, the parties interested entered into another agreement in reference to the trust property, which, as reduced to writing and signed, was in these words: "Compromise and settlement under former agreement, a copy of which is hereto appended. A great deal of the property went into the hands of the trustee, Mooring, or it was sold or rented by him or his successor, Z. W. Woodruff, or by the sheriff. Questions of dispute have arisen; Mrs. E. R. McMahon claiming that her separate estate has been taken, and that it is not liable either in law or equity, or by virtue of said agreement; Turner Bell claiming that, by sheriff's and other sales, property exempt from execution has been sold; R. G. McMahon and his wife claiming the same, and claiming damages therefor, and claiming in her behalf divers rents, damages, and injury to property, and property itself. In settlement of all which, it is agreed between said McMahon and wife and Bell and wife on the one part, and Z. W. Woodruff, representing the other parties, as follows: Quit-claims shall be mutually executed, so as to convey title as follows—to Mrs. E. R. McMahon," certain designated property; "to said Woodruff as such trustee, or to the said parties whom he represents," certain other property particularly designated. "All moneys in the hands of the trustees, from sales of property and rents, shall be equally divided, Mrs. McMahon taking one-half; and all sums due for past sales and rents shall, when collected, be equally divided. The sum of one thousand dollars, which Mrs. McMahon is to pay as part consideration of this contract, is to be deducted from her share, unless previously paid; and the title to the property allotted to her by this compromise may be withheld until the sum is paid, or is properly accounted for. Said Woodruff and his associates are to be released from all claim for any past neglect of renting, improper renting, improper sales, damages to property, failure to collect, sales of exempt property, liabilities for acts of the sheriff, or for moneys collected by him. The sales heretofore made by the trustees, or either of them, or by the beneficiaries under this agreement, are to be confirmed, the

absolute property passing to the purchaser in case of trust sale," &c.

Copies of both of these agreements were made exhibits to the bill. Mooring died in July, 1874, and an amicable settlement of his accounts as trustee was afterwards made between his widow and personal representative and the beneficiaries under the trust. The bill alleged that deeds were executed by the several parties in accordance with the provisions of the last agreement, but the deed to McMahon and wife had never been delivered, being withheld until the payment of the $1,000 as stipulated, and they had been placed in possession as allotted to them; and that Woodruff, as trustee, had continued to hold the residue of the property, renting it out, receiving the rents, &c. McMahon and wife and Bell and wife were made defendants to the bill, with Woodruff. The bill prayed that the trust might be finally closed and settled on the basis of the compromise agreement, and that the trustee be required to account. An answer was filed by Woodruff, admitting all the material allegations of the bill, and submitting a statement of his accounts as trustee, which showed that he had collected as trustee $1,263.63, and had paid out $932.14. A decree *pro confesso* was entered against the other defendants. The cause being submitted to the chancellor on bill and exhibits, decrees *pro confesso*, and answer of Woodruff, he took jurisdiction of the case, and ordered the register to state the accounts of the trustee. The trustee filed an account before the register, charging himself with $2,121.36, and claiming credits to the amount of $1,723.72, besides commissions; but the account stated by the register charged him with receipts aggregating $3,620.75, and credited him with disbursements to the amount of $737.40, thus showing a balance of $2,883.35 against him. The trustee reserved several exceptions to the rulings and conclusions of the register in the statement of the account, among which were the following: 1st, "to the action of the register in charging him with the rent of the old printing-office, for five years and ten months, at the rate of $100 *per annum;*" 2d, "to the action of the register in allowing him only $181.03 as commissions, or compensation, on the ground that it was not sufficient;" and, 3d, "to the action of the register in allowing him only $75 as an attorney's fee in this case." The chancellor overruled the exceptions, and confirmed the register's report; and these rulings, with other matters, are now assigned as error by the trustee.

WALKER & JOLLY, for appellant.

[McKemie v. Gorman.]

SNEDECOR & COCKRELL, *contra.*

STONE, J.—The receipts and disbursements by the trustee, Woodruff, aggregate about $4,350. The nature and character of the trust and trust property show that, in executing the trust, rather unusual trouble and annoyance were to be encountered. Five per cent. on each side of the account, debit and credit, should have been allowed to the trustee.—*Magee v. Cowperthwaite*, 10 Ala. 966; *Gould v. Hayes*, 25 Ala. 426; *Pinckard v. Pinckard*, 24 Ala. 250; 1 Brick. Dig. 978, § 907.

The testimony scarcely justified the charge of one hundred dollars *per annum*, as rent for the old printing-office. We are not convinced by the testimony set out that the trustee did not employ reasonable diligence to procure a paying tenant, nor that the property could have been let at a rental of one hundred dollars per annum. Trustees are required to employ that degree of diligence which an ordinarily prudent man bestows on his own similar business interests; and if he do so, he acquits himself of blame. We send this question back for further testimony.

Under the rule declared in *Smith v. Kennard*, 38 Ala. 695, we think this a case for division of counsel fees between the trust fund and the trustee personally. Let the register ascertain what would be a reasonable fee for services rendered in this case, including services on this appeal, and let one-half of such sum be allowed the trustee as a credit against the trust liability.

Reversed and remanded.