ALMON, Justice.
This is an appeal from a decree of final settlement of the estate of William Pelzer Arrington.
Alabama National Bank of Montgomery, as executor of the estate of William Pelzer Arrington, filed a petition for a final settlement of the estate in the Circuit Court of Montgomery County on August 22, 1980. Pursuant to that petition, the Circuit Court issued a decree of final settlement on November 7, 1980. The appellant asserts two errors in the decree; that the award of $304,000 to Alabama National Bank as executor’s fees was excessive and an abuse of discretion, and that the interest on additional estate taxes due should not be paid by the income beneficiaries.
The award of executor’s fees is controlled by Code 1975, § 43-2-680 as follows:
Executors and administrators may be allowed such commissions on all receipts and disbursements by them, as such, as may appear to the probate court to be a fair compensation for their trouble, risk and responsibility, not to exceed two and one-half percent on the receipts and the same percentage on the disbursements; and the court may also allow actual ex *676 penses, and, for special or extraordinary services, such compensation as is just, and such premiums as an executor or administrator may have paid a guaranty company for making his bond.
The trial judge found that $304,000 was a fair and reasonable fee considering the trouble, risk and responsibility of Alabama National. The award of executor fees is largely within the discretion of the trial judge. In Smith v. McNaughton, 378 So.2d 703 (Ala. 1979), this Court stated:
... we note that the language of that statute is permissive, rather than mandatory. While it allows the court to set a reasonable compensation for efforts of the administrator or executor, it does not require that such compensation be granted. The allowance is a matter of judicial determination, Hale v. Cox, 240 Ala. 622, 200 So. 772 (1941), and what shall be allowed below or up to the maximum limit prescribed by that section is to be determined according to the circumstances of each particular case. Kenan v. Graham, 135 Ala. 585, 33 So. 699 (1902).
In Kenan the Court explained the predecessor to § 43-2-680 and its rationale as:
. .. [creating] a maximum limit to compensation to be allowed executors and administrators, for the ordinary services performed by them, and what shall be allowed, below or up to this limit, is to be determined according to the circumstances of each particular case. “The court in making the allowance is to look to the loss of time, risk and responsibility, which are demanded .... and which is actually incurred, and to allow ... such a reasonable remuneration as a prudent and just man would, in view of the circumstances, consider a fair compensation, without, however, being governed by business charges usually made for like services.” When thus allowed, the compensation is not, and should not be, but little, if anything, more than liberal indemnity. The condition and value of the estate should be a controlling consideration in all cases. Gould v. Hays, 25 Ala. 426, 432; Clark v. Knox, 70 Ala. [607] 608, 615; Woodruff v. Snedecor, 68 Ala. 437; Newberry v. Newberry, 28 Ala. 691. If the estate has but few undisputed debts, its property consisting most largely of stocks, bonds or solvent securities, involving only ordinary care and attention in their handling and distribution, and of real estate which may be readily rented, and at the proper time divided or sold for division among those entitled, and the value of the estate is large, a liberal compensation may and often should be, less than the maximum statutory allowance, but never greater, even if the administration involves much care, attention and trouble. If extraordinary services are rendered, these may be compensated for beyond the statutory allowance, owing to the particular services rendered, and the attending conditions and circumstances.
Since the trial judge made the determination of executor’s fees after hearing the evidence ore tenus, the decree should not be disturbed unless it is palpably wrong. Smith, supra.
The value of the Arrington estate used to determine the executor’s fees was $7,469,-273.92. The maximum fee allowable under Code 1975, § 43-2-680 and § 43-2-681, as calculated by Alabama National was $373,-463.70, which was undisputed at trial. The estate tax return filed by Alabama National showed an estimated $350,000 as executor’s fees. Subsequently, upon advice of a consultant hired by a remainderman under Arrington’s will, Alabama National reduced its fee request to $304,657.52. The trial court awarded Alabama National $304,000, which was below the statutory maximum.
The appellants assert that it was error to include the value of the “flower bonds” in the estate. We note that the fee was not charged on the total value of the bonds. As we understand the record, the fee was only charged on the difference between the purchase price and the surrender value. Consequently, we are not prepared to say, as a matter of law, that this was error.
There was testimony that the administration of this estate was very com *677 plex and troublesome. David Thomas, the trust officer in charge of the estate for Alabama National, testified to the many matters that had to be handled for the estate. Among these were:
1) A review of bank transactions, stock transactions and correspondence in preparation for a will contest;
2) Served as administrator ad colligen-dum for six to seven weeks. During this time off-duty policemen were hired to protect valuable personal and real property of the estate. Alabama National advanced approximately $7,000 to pay for these expenses;
3) Negotiated with the Internal Revenue Service to discount stock owned by the estate in a closely held corporation. The estate owned approximately 10% of the outstanding stock of the corporation. Alabama National was able to get the Internal Revenue Service to agree to a 2&h% discount on the stock;
4) Sought and obtained judicial reformation of the will so as to qualify four $100,000 gifts to charities as a charitable remainder unitrust and give the estate a $400,000 charitable deduction;
5) Sought and obtained a second judicial reformation of the will to establish a perpetual trust for the care of Arring-ton’s parents’ and Arrington’s graves-ites;
6) Persuaded Armstrong to exercise his power of attorney to purchase U. S. Treasury Estate Tax Bonds (“flower bonds”). Alabama National subsequently negotiated with the Bureau of Public Debt to accept the bonds in payment of estate taxes. Alabama National loaned the estate over 1 million dollars to make possible the purchase of the bonds. The use of the bonds resulted in a $141,700 tax savings to the estate; and
7) Prepared the estate tax return which was very involved and complex.
Mr. Thomas testified he personally had spent 2600 hours working on matters for the estate. He also testified that he had worked with estates of comparable size but not one that had all the problems and complexities this estate had.
Mr. William E. Reynolds, who runs an estate planning consulting firm in Atlanta, Georgia, was hired by a remainderman under the will to make an executor’s fee recommendation. He testified he had 34 years of experience in the estate planning and management field. He testified that he had dealt with several estates that were three times as large as the Arrington estate, but not with one that had more complex problems.
After an examination of the record we conclude there was sufficient evidence to support the trial court’s award of executor’s fees. However, we do want to emphasize that the estate involved was very large and complex and it is only such an estate that could justify the executor’s fees awarded in this case. As we have stated, the peculiar facts and circumstances of each case must be considered. Even though we consider the fees awarded to be somewhat high, nevertheless, under the applicable standard of review, we cannot conclude that the trial court abused its discretion.
As a result of the executor’s fees being less than was estimated on the federal estate tax return, additional estate taxes were due. In the final settlement decree, the trial court directed Alabama National to file an amended estate tax return and pay the additional estate tax due out of principal of the estate and the interest due on the additional tax was to be paid out of income. Appellant asserts this was error and cites Arrington’s will and Code 1975, § 40-15-18, as supporting authority. However, the will and § 40-15-18 only speak to the payment of taxes and not to the payment of interest due on taxes. The appellant cites no case that specifically addresses the issue.
In Estate of Bahr v. Commission, 68 T.C. 74 (1977), the tax court considered whether the interest on estate taxes was deductible as an administration expense. During the course of the opinion the court stated that “. . . it has been consistently recognized by *678 this and other courts that ‘interest on a tax is not a tax, but something in addition to a tax.’ ” The tax court allowed the interest as an administration expense deduction.
Since the authorities cited by the appellant speak to the payment of taxes only we do not consider them controlling here.
During the period that the additional estate taxes were not paid, the principal of the estate that would have been used to pay the taxes was earning interest for the benefit of the income beneficiaries. Mr. Reynolds, with 34 years of experience, testified that to charge the interest to income was the normal procedure. Mr. Thomas testified that it was standard banking practice to charge the interest against income.
Having considered the authorities relied on by both parties, we conclude that it was not error to charge the interest to income. To do otherwise would result in a windfall to the income beneficiaries. They were in fact the ones that reaped the benefits of the use of the principal that should have been paid in tax, consequently, they should be charged for that use.
The judgment is due to be and is hereby affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, EM-BRY and ADAMS, JJ., concur.