# Benagh, adm'r *v.* Turrentine, adm'r.

*Final Settlement of Accounts of Deceased Administrator.*

1. *Widow's quarantine, and duty and liability as administratrix.*—When the widow becomes administratrix of the estate of her deceased husband, it is her duty as administratrix to institute proceedings, within a reasonable time, to have her dower allotted to her; and if she fails to do so, she can not claim the rents and profits of the plantation as her statutory quarantine (Code of 1876, §§ 2238-9), but is chargeable as for a *devastavit.*

2. *Same.*—What is a reasonable time, within which she should institute such proceedings, depends somewhat on the known condition of the estate: when the estate is known to be insolvent, or where the widow has dissented from the will, no delay should be allowed; in other cases, ordinarily, eighteen months should be allowed for the presentation of claims, and ascertaining the condition of the estate.

3. *Same; taxes.*—When the widow, or her estate, is charged on settlement of her accounts as administratrix, on account of her failure to have her dower assigned, as for a *devastavit*, she is only chargeable with two-thirds of the value of the rent of the plantation from the time when she should have had her dower assigned, since the other third would belong to her as dower; and she should be credited with two-thirds of the taxes paid on the land from and during the same time.

4. *Allotment of dower; jurisdiction of Probate Court.*—The Probate Court has no jurisdiction to allot dower to the widow in lands in which her husband, though in possession, had only an undivided half-interest at the time of his death.

5. *Repairs to dwelling-house and lands.*—On settlement of the accounts of the widow, as administratrix of the estate of her deceased husband, she is entitled to a credit for the value of repairs on the dwelling-house and plantation, which were necessary to their habitation and cultivation; but, being held entitled to the use and occupation of the premises for two years free of rent, as her statutory quarantine, she should be charged with her reasonable proportion of the cost of such repairs; and these questions should be settled on the settlement of her administration by the Probate Court.

6. *Board and maintenance of infant distributees.*—When such settlement is had with the administrator *de bonis non* of the husband's estate, the widow can not be allowed a credit for the board and maintenance of the infant distributees; though that question might be settled on the final distribution of the estate, after the claims of creditors had been satisfied.

7. *Computation of interest.*—On the settlement of an administrator's accounts, he should be allowed interest on disbursements, unless he then had in his hands money belonging to the estate; but, if he then had money in his hands, on which he was chargeable with interest, the disbursements should be first applied to the extinguishment of the accrued interest, and the balance deducted from the money on hand.

APPEAL from the Probate Court of Limestone.
In the matter of the estate of Thomas H. Hobbs, deceased,

on final settlement of the accounts and vouchers of Mrs. Anne B. Hobbs, his deceased widow and administratrix, by James Benagh, her administrator; the accounts and vouchers, as filed for settlement, being contested by John Turrentine, as administrator *de bonis non* of said Thomas H. Hobbs. The decedent, Thomas H. Hobbs, was a resident citizen of said county at the time of his death, which occurred on the 22d July, 1862; and he died intestate, leaving his widow, Mrs. Anne B. Hobbs, and two infant children, as his heirs-at-law and the distributees of his estate. He was also seized and possessed of a valuable estate, consisting of lands, slaves, and other personal property. The lands consisted of three separate but contiguous tracts, which he held under the will of Thomas Maclin, deceased, by whom they were devised to him in fee, but subject to a life-estate in his mother, Mrs. Rebecca Hobbs, to the extent of an undivided half interest; and he resided on and cultivated the entire tract, as one plantation, up to the time of his death. After his death, the lands were seized by officers of the United States, as confiscated property, and were held and occupied by them until the 1st January, 1866, when possession was delivered to his widow, who had procured a special pardon from the president of the United States, for her complicity in the rebellion. On the 31st January, 1866, letters of administration on the estate of her deceased husband were granted to the widow; and she died on the 19th August, 1872, having never made any settlement of her administration. During all this time, she resided in the dwelling-house, with her two children, renting out a portion of the lands, and cultivating a portion with hired labor. On the 11th July, 1868, a petition was filed in her name by James Benagh, as her attorney in fact, asking an allotment of her dower in the lands; but the petition was dismissed, on her motion, on the day set for the hearing, and no assignment of her dower was ever made; nor was any guardian ever appointed for the children. Mrs. Rebecca Hobbs, the mother of said Thomas H., was living at the time of the settlement, in March, 1876.

The above being the material facts shown by the record, the administrator of Thomas H. Hobbs moved the court to charge the widow, as administratrix, with the value of one-half of the annual rent of the lands, "from and including the year 1866, to the year 1872 inclusive, with interest from the end of each year;" which motion the court sustained. The administrator of the widow then amended his account, by leave of the court, by claiming a credit for repairs and improvements made on the house and lands, amounting to $603.70; also, for $6,046, as amount expended by the widow

for the support and maintenance of the children; and the
further sum of $1,163.03, on account of taxes paid on the
lands from 1866 to 1872, both inclusive. The court allowed
a credit for one-third of the taxes paid on the lands, but
refused to allow any credit for either of the other items; and
to these rulings of the court exceptions were reserved by the
widow's administrator. On the statement of the account by
the court, a balance was ascertained against the widow for
$5,202.27, for which a decree was rendered against her
administrator. The rulings of the court above stated, and
numerous other rulings, principally on questions of evidence,
to which exceptions were reserved, but which require no
special notice, are now assigned as error, together with the
final decree.

McClellan & McClellan, with whom was James Benagh,
for appellant.

Luke Pryor, contra.

STONE, J.—Dower has always been a favored right in
English jurisprudence. Before the Conquest, it, and its com-
plement, quarantine, were recognized as fundamental prin-
ciples in British civilization. Coke classes it in the trio of
rights which the law favors : life, liberty, and dower. So
rooted had the sentiment become, that in *Magna Charta* it
was provided, that the widow " may remain in her husband's
house forty days after his death, within which time her
dower shall be assigned." And Canute, the Danish usurper,
is said to have proclaimed the edict, " *Ubi maritus habitavit,
absque lite, et absque controversia, habitent uxor et infans ubique,
absque lite.*" And so our statutes, which secure quarantine
and dower to the widow, and a succession to the homestead,
if a decedent leave a surviving wife or infant child, are con-
ceived in the same humane spirit.

In 1826 it was enacted, that the widow shall " retain the
full possession of the dwelling-house in which her husband
most usually dwelt next before his death, together with the
outhouses, offices, or improvements, and plantation there-
unto belonging, free from molestation and rent, until she
shall have her dower assigned her."—Clay's Dig. 173, § 7.
In the same statute it was declared to be " lawful for any
widow, claiming dower, to file her petition in the Circuit or
County Court, in the county where the husband shall have
usually dwelt next before his death, setting forth the nature
of her claim, and particularly specifying the lands, tene-
ments, and hereditaments, of which she claims dower, and

praying that dower may be allotted to her; whereupon the said court shall issue their writ," &c.—*Ib.* § 5.

Under this statute, the widow alone is named, as having authority to file the petition. It was declared by this court, "The object of the statute was to protect the widow in the enjoyment of the homestead, and the rents and profits accruing therefrom, until her dower was assigned, and to make it incumbent on those entitled to the fee, whether they be the heirs-at-law or purchasers, if they desired to obtain possession of the portion to which they were entitled in the real estate, to become themselves the actors to have the widow's dower assigned her. If they remain inactive, and acquiesce in her possession, she is not subject to the payment of rent, nor to molestation. Until her dower is assigned, she holds the premises for an indefinite period, and may rent them out and appropriate the proceeds to her own use."—*Shelton v. Carroll*, 16 Ala. 148; *Inge v. Murphy*, 14 Ala. 289; *McLaughlin v. Godwin*, 23 Ala. 846; *Oakley v. Oakley*, 30 Ala. 131; *McAllister v. McAllister*, 37 Ala. 484; *Smith v. Smith*, 13 Ala. 329; *Doe, ex dem. v. Webb*, 18 Ala. 810; *Boynton v. Sawyer*, 35 Ala. 497; *Slatter v. Meek, Ib.* 528; *Perrine v. Perrine, Ib.* 644; *Walters v. Williams*, 38 Ala. 680.

These statutes have been very materially changed since that time, in this: "the widow, heir," and "personal representative of the husband," are all mentioned in the statute, as having authority to file the petition.—Code of 1876, §§ 2238-9. The personal representative is charged with a trust, to collect together the assets of the estate, preserve them, and apply them, after defraying the expenses of administration, first to the payment of debts, and next to the claims of legatees and distributees. If there be a deficiency of personal assets to pay the debts, he must institute proceedings to subject the real estate to the payment of such debts as may remain unpaid, after exhausting the personal estate. In this last function, he is said to represent the creditors, and to become the antagonist of the heirs.—*Bond v. Smith*, 2 Ala. 660; *Steele v. Humes*, at present term. As to the duty and authority of the personal representative, see *Stewart v. Stewart*, 31 Ala. 207; 1 Brick. Dig. 957, §§ 609, 610, 611.

If any person, other than the widow, was the personal representative of an estate, and neglected, for the space of six and a half years, to have the widow's dower allotted to her, thus leaving her in the entire possession and control of the "dwelling-house where her husband most usually resided next before his death, with the offices and buildings appurtenant thereto, and the plantation connected therewith," and

all the income and profits thereof ; and if a sale of the realty should become necessary for the payment of debts, we would not hesitate to declare that such personal representative thereby committed a *devastavit*, and rendered himself liable to account for the loss he had entailed on the estate. The fact that the widow becomes administratrix can not vary the rule. As widow, she may be under no obligation to move in the matter. She represents herself. But, when she takes upon herself the administration of the estate, her duties, and consequent liabilities, are enlarged. She becomes trustee for others, and, while caring for her own interests, she must not neglect the interests of those for whom she holds in trust. We decide that it was the duty of Mrs. Hobbs, within a reasonable time after she was appointed administratrix, to take steps to have her own dower allotted ; and that failing, she is liable as administratrix for the injury the estate suffered by reason of her failure.

What is a reasonable time, within which proceedings should be instituted for the assignment of dower, must depend somewhat on the known condition of the estate. No unbending or arbitrary rule can be declared. If the estate is known to be insolvent, so as to render it necessary to sell the lands for the payment of debts; or, if there be a will, and the widow dissents, and claims dower, then no reason or excuse exists for delay in proceeding to have it assigned. On the other hand, the statute allows eighteen months for the presentation of claims. The condition of the estate may not be known until that time. In such case, it would not seem unreasonable, or be sufficient proof of mal-administration, if no proceedings were instituted until after the expiration of that time. Allowing reasonable time for instituting proceedings, and conducting them to a decree, another six months should probably be allowed, before the imputation of waste, or neglect, could rightly be indulged. Hence, we think the Probate Court erred in charging Mrs. Hobbs rent for the first two years—1866 and 1867. The court also erred in charging her full rent for the remaining two years. Her dower, if allotted, would have given her one-third of those rents ; and consequently, the loss to the estate, by her failure to have dower assigned, is only two-thirds of the value of the rents of the undivided half, commencing with the year 1868. She should have no credit for the taxes paid for the years 1866 and 1867, and credit for only two-thirds of the taxes for the remaining years.

No importance attaches to the fact that a petition was filed for her in the Probate Court, praying for dower, and afterwards voluntarily dismissed. Mr. Hobbs' tenancy of

(36)

the land was only an undivided half interest at that time, and the Probate Court had no jurisdiction to allot dower.— Code of 1876, §§ 2239, 2248; 1 Brick. Dig. 617, § 71; 1 Scrib. on Dower, 74. The Chancery Court alone could have decreed dower in this case.

We think the Probate Court erred, also, in ruling that he had not jurisdiction to consider of the question of repairs, to render the dwelling habitable, and the plantation cultivable.—*Henderson v. Simmons*, 33 Ala. 291. In allowing for repairs, however, the whole expenditure must not be allowed. The first two years of the enjoyment, the administratrix had the sole use ; and for the remaining years, she had one-third of the use. This outlay should be apportioned between the parties, so as to make each pay in proportion to the benefit conferred. It is probable that one-half, or three-fifths, should fall on the estate of Mr. Hobbs, to be taken out of the rents, and the residue be rejected, as properly an expense resting on Mrs. Hobbs. This can be better adjusted on proof before the Probate Court.

The claim for board and maintenance of the infant heirs can not come up in this proceeding. The Probate Court has no power or right to consider it, on a settlement of Mrs. Hobbs' administration with the administrator *de bonis non*. If this was a proceeding for distribution, in which decrees could be rendered in favor of distributees, then possibly these equities could be considered. But the present claim is by the administrator *de bonis non ;* and, for aught that can appear in this proceeding, all the assets may be needed for the payment of debts. It is scarcely necessary to say, that the claims of creditors are paramount to those of distributees. If the assets are more than sufficient to pay debts, and if there is a surplus for distribution, the Probate Court, in this settlement, has no jurisdiction to inquire of advances made by Mrs. Hobbs to or for her children, or to adjust any equities between them. If there is a remedy, it is in another forum.

In making final settlement, the administratrix is entitled to credit for her disbursements as of the time they were made. That is, if, when she made disbursements, interest had accrued against her, then such disbursement must be applied first to the extinguishment of the accrued interest, and any balance should be deducted from the principal of assets received. If, when she made disbursements, she had received, or was liable to account for no money assets then in her hands, she should, in like manner, be allowed interest on advances thus made.

Reversed and remanded.