# Clark *v.* Knox.

*Bill in Equity by Administrator, for Settlement and Distribution of Decedent's Estate.*

| 70 | 607 |
| 111 | 648 |
| 113 | 536 |

| 70 | 607 |
| 117 | 226 |

| 70 | 607 |
| f124 | 321 |

| 70 | 607 |
| 133 | 302 |
| 133 | 303 |

| 70 | 607 |
| 135 | 595 |

1.   *Appointment of administrator ad litem.*—Under a bill for the settlement and distribution of a decedent's estate, filed by the administrator *de bonis non*, who was also the administrator of the respective estates of several deceased distributees, the statute authorizes the court, or the register in vacation, to appoint an administrator *ad litem* of the estate of each deceased distributee interested adversely to the administrator (Code, § 2625) ; and the record in this case does not show that the appointments were either unnecessary or improvident.

2.   *Compensation of such administrator.*—The statute makes express provision for the allowance of compensation to such administrator *ad litem* (Code, § 2630), and clothes the presiding judge or chancellor with

- [Clark v. Knox.]

a judicial discretion as to the amount of the allowance; and while the condition and value of the estate should always be a controlling consideration in the determination of the allowance, the chancellor should not reduce the amount allowed by the register, simply on account of the insignificant .value of the estate, unless the other evidence shows that the allowance is excessive.

3. *Allowance of counsel fees to administrator.*—An executor or administrator, in good faith procuring the aid and advice of counsel in the performance of his duties, and paying a reasonable compensation for the services, is entitled, on settlement of his accounts, to a credit for the sum so paid; and if he is himself an attorney or solicitor, and in that capacity renders necessary services for the estate, he is entitled to compensation for such services—not the usual professional charges, but a fair and reasonable allowance in view of all the facts of the particular case.

4. *Same; objection or exception to allowance by register.*—Neither the register nor the chancellor can take judicial notice of the value of professional services as attorney, rendered by an administrator in proceedings before the Probate Court relating to the affairs of the estate; and if no objection is made before the register, and no exception reserved to his action, in the matter of an allowance to the administrator for such services, the chancellor has no authority to reduce the allowance.

5. *Same; in suit for settlement and distribution.*—An administrator is entitled, on settlement of his accounts in equity, to an allowance for reasonable counsel fees for services rendered in the suit instituted by him for a settlement and distribution, when the condition of the estate, and the conflicting trusts united in his person, rendered it necessary to resort to a court of equity.

6. *Liability of administrator for interest.*—The rule in courts of equity, as to the liability of an executor or administrator for interest, is materially modified by the statute (Code, § 2520), which has been construed to make him *prima facie* liable for interest, unless he makes the prescribed affidavit; but, when he delays making a settlement and distribution beyond the period allowed him by law for ascertaining the condition of the estate, and does not show the existence of any special circumstances justifying the delay, he is chargeable with interest on the moneys collected and so retained, although he makes the statutory affidavit, and it is not controverted.

7. *Same.*—What will constitute unreasonable delay in making a settlement, rendering the executor or administrator liable for interest, must depend on the facts and circumstances of each particular case; the inquiry always being, whether a prudent man, dealing with his own funds, would, under these circumstances, have retained the money in his hands unproductive, or would have appropriated it as *prima facie* it was to be appropriated.

8. *Objections before register, and exceptions to report.*—"Exceptions must be founded on objections allowed or overruled by the register; all objections, not made or insisted on before him, must be considered as waived or abandoned." (*Per* BRICKELL, C. J.) "This was the English rule, and, for a long time, was regarded as the rule here. But, under our rules of practice, the majority of the court think that this language states the rule too broadly. There may be cases in which, to sustain an exception before the chancellor, the record must affirmatively show action taken, or motion made, before the register; as, a failure to take proof, or to act on a matter not specially referred to him. But, when the register's report, or the testimony, one or both, show that he has disobeyed the decretal order or the instructions of the chancellor, or that he has otherwise committed some positive error of law or fact, it is not necessary that any motion or exception should be made or taken before him, or that he shall be notified an exception will be taken."

[Clark v. Knox.]

9. *Liability of administrator for rents.*—The statutory power of an executor or administrator to rent out the lands of the decedent (Code, § 2446), is intended for the benefit of creditors, and involves a corresponding duty on his part to take the proper steps, within a reasonable time after ascertaining that resort must be had to the lands for the payment of debts, to intercept the title of the heir or devisee, and to terminate the possessory interest of the widow; and for the neglect of this duty, if loss thereby ensue, he is answerable to the parties injured, as for the neglect of any other duty.

10. *Same.*—What is a reasonable time, within which the administrator should act in such cases, there is always great difficulty in determining; and there is no safer rule, though it is not very definite, than to require him to act as a prudent man, looking to his own interests, would act under the same or similar circumstances. The case of *Benagh v. Turrentine*, 60 Ala. 557, was an original administration of a solvent estate, the widow herself being the administratrix; and the time there allowed would not, ordinarily, be reasonable in case of an administration *de bonis non* of an insolvent estate.

11. *Sale of exempt property by administrator.*—A sale of property which is exempt from administration, by the administrator in chief, is a tort for which he is personally liable, but does not create any liability on the assets in the hands of the succeeding administrator, in favor of the distributees; "unless, perhaps, it were shown that he had accounted to the administrator *de bonis non* for such moneys."

12. *Claims against insolvent estate.*—When a claim against an insolvent estate is duly filed within the time allowed by law, and no objection to its validity or justness is filed within twelve months after the declaration of insolvency (Code, § 2568), the allowance of the claim is matter of right secured by statute to the creditor.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 9th March, 1878, by Thomas C. Clark, as the administrator of the estate of Jane Knox, deceased, and as administrator of the respective estates of Calhoun H. H. Knox, James M. Knox, and Samuel P. Knox, deceased, who were children of said Jane Knox, and as the administrator *de bonis non* of the estate of Samuel A. Wilson, deceased, who was the surety of Mrs. Jane Knox on a note given for the price of property bought by her at a sale of property, real and personal, belonging to the estate of said Calhoun H. H. Knox, her deceased son; and all the persons interested as distributees in the estates were made defendants to the bill, which prayed a settlement and distribution of the estates.

The said C. H. H. Knox died in 1859, leaving a widow and several brothers and sisters, as his heirs at law and the distributees of his estate; and his widow, Mrs. Amelia E., afterwards married one McWhorter, and died in 1877. A. R. Davis became the administrator of the estate of said C. H. H. Knox, and sold all the property, real and personal, under orders of the Probate Court; Mrs. Jane Knox, his mother, becoming the purchaser of most of the property, and giving her note for the purchase-money, $3,070.50, with James M. Knox and Samuel A.

[Clark v. Knox.]

Wilson as sureties. This note not being paid at maturity, an action at law was instituted on it by the administrator; but he afterwards removed from the State, not having collected the claim, and died without having made a settlement of his administration. On the 4th October, 1875, letters of administration *de bonis non* on the estate of said C. H. H. Knox were granted to said Thomas C. Clark.

Samuel A. Wilson, who signed the note given by Mrs. Knox for the property bought at said sale, died during the early part of the year 1861, possessed of real and personal property of considerable value; and letters of administration on his estate were granted, on May 9th, 1861, to William Wilson; and said William Wilson having died without having made a final settlement of his accounts, letters of administration *de bonis non* on the estate of said Samuel A. Wilson were granted on the 6th November, 1866, to said Thomas C. Clark, by virtue of his office as general administrator of the county; and on November 10th, 1866, he recovered a decree for $75.40 against the personal representative of said William Wilson, on final settlement of his intestate's administration on the estate of said Samuel A. Wilson. Afterwards, on the report of said Clark as administrator, the estate of said Samuel A. Wilson was declared insolvent, principally on account of his liability on the note so signed by him as surety for Mrs. Jane Knox; and under an order of the Probate Court, the lands belonging to his estate were sold in August, 1869.

Mrs. Jane Knox died some time during the year 1867, and letters of administration on her estate were granted on the 11th November, 1867, to said Thomas C. Clark, as the general administrator of the county; and that estate being afterwards reported and declared insolvent, the property was sold by him under orders of the court. Samuel P. Knox died in 1865, his surviving brothers and sisters being his heirs at law and the distributees of his estate; and letters of administration on his estate, which consisted of his interest in the estate of his deceased brother, C. H. H. Knox, and his interest in the claim against the estate of Mrs. Jane Knox, were granted to said Thomas C. Clark on the 17th March, 1871. James M. Knox also died, leaving no estate subject to administration except his interest in the other estates; and letters of administration on his estate being granted to said Clark, on March 17th, 1871, that estate was declared insolvent on his report, on account of his liability as surety on the said note given by Mrs. Jane Knox for the property bought by her belonging to the estate of C. H. H. Knox. There were other complications in the accounts of the administrator, growing out of the relations of the parties to

[Clark v. Knox.]

each, other; and it was alleged that one estate could not be settled until all were settled.

At rules before the register, on March 11th, 1878, on motion of the complainant, and as prayed in the bill, Thos. W. Coleman was appointed administrator *ad litem* of the estate of Samuel A. Wilson, for the purposes of this suit; E. Morgan, administrator *ad litem* of the estate of C. H. H. Knox; James P. Head for the estate of Samuel P. Knox, and D. Poynor for the estate of James M. Knox; the order reciting, that the complainant in the cause "is interested adversely to the estate of each of said deceased persons, and that the estate of each of said deceased persons must be represented in said cause." Each of said administrators accepted the appointment, and pleadings were filed by some of them; but the chancellor entered a decretal order, on June 12th, 1878, to the effect that it was "unnecessary for them to file answers, demurrers, or cross-bill, as they will have the right and opportunity to appear before the register, when he states the complainant's accounts, and represent the interests of said several decedents' estates, by moving to charge the complainant with any moneys with which he is legally chargeable in his character of administrator."

Decrees *pro confesso* were entered against all the adult defendants except E. B. Mobley, as the administrator of the estate of Amelia E. McWhorter, who filed an answer. In this answer, the administrator alleged, that A. R. Davis, while acting as the administrator of the estate of C. H. H. Knox (whose widow was the said Amelia E.), sold certain personal property which was exempt from administration in favor of the widow, and used the proceeds of sale in paying the debts of the estate; and he insisted that the estate of said C. H. H. Knox was accountable to him, as the administrator of the widow, for the value of this property. Said administrator afterwards moved to vacate the order appointing the several administrators *ad litem*, on the ground that the appointments were unnecessary, and without authority of law; but the chancellor overruled the motion, holding that the appointments were properly made.

The chancellor entered a decretal order, taking jurisdiction of the settlement of the several estates, and ordering the complainant to file his accounts and vouchers for a settlement. On the various references before the register, and the statement of the accounts by him, the several estates were represented by the respective administrators *ad litem;* the principal matters of controversy being, the liability of the complainant, as administrator, for interest and for rents; and various exceptions were reserved to the rulings of the register in reference to these matters, as well as to the allowance of attorney's fees and compensation to the complainant. The compensation allowed by the

[Clark v. Knox.]

register to each of the administrators *ad litem* was from $120 to $150 each, but this was reduced by the chancellor to $25 each. The material facts bearing on these several questions appear in the opinion of the court.

From the decree Thomas C. Clark appeals, and here makes, "as administrator of the several estates of C. H. H. Knox, Jane Knox, James M. Knox, Samuel P. Knox, and Samuel A. Wilson, deceased," the following assignments of error: "1. That the chancellor erroneously charged appellant with rent of the lands of Samuel A. Wilson, from January 1st, 1869. 2. That the chancellor erroneously charged appellant with one year's rent of lands belonging to estate of James M. Knox. 3. That the chancellor erroneously charged appellant with interest on moneys in his hands belonging to the several estates of Samuel A. Wilson, Jane Knox, and James M. Knox. 4. That the chancellor erroneously charged appellant with interest on $506, from November 1st, 1869; and on $1,402, from October 1st, 1871; and on $229, from August 20th, 1874, to March 9th, 1878. 5. That the chancellor erroneously charged appellant with interest on $1,270.73, from October, 1870. 6. That the chancellor erroneously charged appellant with interest on $800, from June 1st, 1876; and on $192, from June 1st, 1873. 7. That the chancellor erroneously charged appellant with interest on the funds of the several estates in his hands. 8. That the chancellor erroneously sustained the several exceptions to the register's report, as to fees allowed to solicitors of appellant as administrator of the several estates. 9. That the chancellor erred in directing the register to ascertain and set apart to Edward B. Mobley, as administrator of Amelia B. McWhorter, who was the widow of C. H. H. Knox, the proceeds of sale of personal property sold by the administrator in chief of said C. H. H. Knox, as exempt to her from administration." As to these assignments, there was a joinder in error on the part of the distributees of the estate of Samuel A. Wilson. Said Clark, as administrator of the estate of Samuel A. Wilson, also assigned as errors all of the above rulings which related to charges against him as the administrator of that estate; and as to these assignments, there was a joinder in error by the distributees of that estate.

E. B. Mobley, as the administrator of the estate of Amelia E. McWhorter, made the following assignments of error: "1. The chancellor erred in failing to charge said Clark, as administrator of the estate of Samuel A. Wilson, with interest on the money in hand for a reasonable period after the same came to his hands, and he could have paid out or distributed the same. 2. In failing to charge said Clark, as such administrator, with the rents of the lands of said Wilson's estate, for

[Clark v. Knox.]

each of the years 1867, 1868, and 1869, at the price proved before the register on the reference. 3. In failing to charge said Clark, as such administrator, with the value of the 160 acres of land belonging to said estate, still unsold. 4. In not charging said Clark, as administrator of Jane Knox, with the moneys in hand, from the time he could have paid out or distributed the same. 5. In not charging said Clark, as such administrator, with the rents on the 280 acres of land belonging to the estate of Jane Knox, from 1868 to 1878 inclusive, at the price proved on the reference before the register. 6. In not ordering a sale of said 280 acres of land belonging to said estate. 7. In not charging said Clark with the value of said 280 acres of land, the possession of which he surrendered to Tyree. 8. In failing to charge said Clark, as administrator of the estate of Samuel P. Knox, with interest on the money in hand, from the time he should have settled and distributed the same. 9. In failing to vacate and annul the register's report allowing said Clark, as such administrator, amounts set forth in the record, which were barred by the statute of limitations. 10. In failing to charge said Clark with interest on the moneys in hand belonging to the estate of James M. Knox, from the time he could have paid out or distributed the same. 11. In not charging said Clark, as administrator of the estate of James M. Knox, with the rents of the 350 acres of land, for each of the years from 1871 to 1878 inclusive. 12. In failing to order a sale of said 350 acres of land, and in not charging said Clark with the value of said lands. 13. In allowing commissions to said Clark as administrator of the several estates of Jane Knox, James M. Knox, and Samuel A. Wilson. 14. In not vacating the order of the register appointing administrators *ad litem* upon the estates of James M. Knox, Samuel P. Knox, C. H. H. Knox, and Samuel A. Wilson. 15. In allowing any compensation out of the said several estates to the said administrators *ad litem*."

By consent, errors were also assigned by the administrators *ad litem* of the estates of Samuel A. Wilson and C. H. H. Knox respectively, on account of the reduction by the chancellor of the amount of compensation reported in their favor by the register; and by the distributees of said Wilson's estate, on account of the chancellor's rulings on several claims connected with that estate.

THOS. H. WATTS, and CLARK & McQUEEN, for appellant Clark, as administrator of said several estates.

G. B. MOBLEY, for Mrs. A. E. McWhorter's administrator.

THOS. W. COLEMAN, *pro se*, as administrator of *ad litem* of Samuel A. Wilson's estate, and for the distributees of said estate.

E. MORGAN, *pro se*, as administrator *ad litem* of the estate of C. H. H. Knox.

BRICKELL, C. J.—There has been in practice some embarrassment and much of expense, resulting from the rule in a court of equity, that, on the hearing, the estate of every deceased person having an interest in the suit must be represented. That there might be a representative of deceased parties, whose interests were rather nominal than real, causes have been delayed, and the parties interested in their prosecution have been driven to the expense of an administration, when administration was in fact a mere ceremony. The rule has, in some cases, been greatly relaxed, and administrations dispensed with sometimes, when the only duty of the representative was to receive with one hand, and pay over with the other to ascertained parties. A case of frequent occurrence, in which a court of equity in this State has been accustomed to dispense with an administrator, dealing with and decreeing directly to the parties in interest, is when the distributee of an estate dies, entirely free from debt, and his co-distributees are his next of kin. Here, if there was an administration of the deceased distributee, his only duty would be collection and distribution; and the parties entitled to distribution being before the court, with the party bound to pay, the administration has been deemed a "useless ceremony."—*Fretwell v. McLemore*, 52 Ala. 124; *Jones v. Brevard*, 59 Ala. 513. Abatements of suit by the death of parties, complainant or defendant, will occur; and all the rights and interest of the party dying may be represented by parties before the court, and yet a revivor in the name of a personal representative be a necessity according to the rules of the court.

To avoid delays, and unnecessary expense, from the general rule requiring the representation of every deceased party having an interest in the suit, in England an act of Parliament provides, that when it appears that any deceased person, having an interest in the matters in question, has no legal personal representative, the court may appoint a repesentative for all the purposes of the suit, or may proceed in the absence of a representative.—2 Dan. Ch. Pr. 2593. It was from this act was probably borrowed our own statute, which authorizes the Court of Probate, or the Court of Chancery, when an estate of a deceased person must be represented, and there is no executor or administrator of such estate, or the executor or administrator is adversely interested, to appoint an administrator *ad li-*

[Clark v. Knox.]

*tem* for the particular proceeding. When the proceeding is in chancery, the register has, in vacation, authority to make the appointment.—Code of 1876, § 2625.

The case made by the bill, as was apparent from its inspection, was within the terms of the statute. There was an administrator of each estate, duly appointed by the proper tribunal. But his several duties compelled him into antagonistic relations, and adverse interests. It was one of the cases, of not infrequent occurrence, for which the statute intended to provide. There is no fact shown, tending to prove that the appointments of the administrators *ad litem* were improvident or unnecessary, and the authority of the register to make them is indisputable.

2. The statute declares: "Such administrator *ad litem* must be allowed for his services such compensation, as the judge of the court appointing may direct, to be taxed and collected as part of the costs of such proceeding, either out of the estate as represented by him, or out of the general fund administered in such proceedings, or out of any party to the cause who may be taxed therewith, as such judge shall direct." Code of 1876, § 2630. Compensation to all personal representatives, and all trustees, has always, in this State, been allowed by law, and by the practice of courts of equity, and Courts of Probate. In the absence of statutes fixing the compensation, the principle upon which the courts acted, was not specific compensation for services rendered, or to be rendered, but a just allowance, keeping in view the facts and circumstances of each particular case.—*Harris v. Martin*, 9 Ala. 895; *Gould v. Hayes*, 25 Ala. 426. The statute is, doubtless, framed in view of this established practice. Whatever may be the discretion with which the court is clothed, it is a judicial discretion, to be controlled and directed, not by the individual opinion of the judge, but by the judgment formed upon the facts before him. It must often happen, that an administrator *ad litem* will be compelled into services, for which no just allowance can be made, without evidence of their value, and without evidence of the value of the estate committed to his care and protection. When that is the case, the allowance of compensation must be based on the evidence. The inquiry should be, not what are the usual charges made in the ordinary course of business for like services, but what, in view of these charges, and the condition of the estate, would a just and prudent man, dealing for himself, be willing to pay. The condition or value of the estate should be a controlling consideration in all cases.

In this case, the administrators *ad litem* seem to have been very diligent in the performance of their duties. They were solicitors of the court, representing themselves, or were repre-

[Clark v. Knox.]

sented by a solicitor. They scrutinized closely the accounts of the administrator, and sought to fix upon him a larger liability than was shown by the accounts he filed; and they were, on exceptions to the report of the register, in some respects successful. The register, after taking evidence, made them an allowance covering their whole service, whether rendered as administrators or as solicitors. The chancellor materially reduced the allowance—not because the evidence did not warrant it, but because he regarded it as excessive, when compared with the value of the estate. The value or condition of the estate, as we have said, must be a controlling consideration in fixing the allowance. Services as administrator, and as counsel, may be necessary, and may be rendered in the administration, or in the protection, of an estate of but little value, demanding as much time and diligence, and as much professional labor and skill, as would be demanded if the estate was of great value. If the value of the estate was the sole criterion by which the compensation was to be measured—if the time, diligence, nature of the services, and skill, were all excluded—it would often occur that there could not be obtained a just representation of the estate. The allowances made by the register, covering compensation as administrator and as counsel, being supported by the evidence, should not have been set aside by the chancellor. It can not be said they are excessive, though the estates were not of great value, when it is borne in mind that they cover, not only compensation for services as administrator, but the compensation of counsel.

3. An executor or administrator, under the system prevailing in this State, is entitled to, and it is prudent and advantageous to all interested that he should have, the advice and assistance of counsel in many of the duties devolving upon him. It is necessary, not only for his own protection, but for the prevention of future litigation. So many of the proceedings, of necessity had in the Court of Probate, are statutory, and their validity, even when drawn in question collaterally, depending upon their conformity to the statutes authorizing them—so many of the proceedings are practically *ex-parte*, and there is and has been such "lamentable looseness" in keeping the records of the court, that a prudent and thoughtful man, at his own expense, would obtain the aid and advice of counsel, rather than incur the hazards of acting without it. Many cases to be found in our reports, involving loss to purchasers in good faith and for value, or vexatious and disastrous litigation to executors or administrators, or to their representatives after their death, which would not have occurred if the records of the court had been properly kept, can be traced directly to the want of the aid and advice of intelligent counsel. It is the established rule, there-

[Clark v. Knox.]

fore, when an executor or administrator, in good faith, procures the aid and advice of counsel to direct him in the performance of his duties, paying only such compensation as is fair and reasonable, when considered in connection with the value of the estate and the services rendered, to allow him a credit for such compensation.—*Pickens v. Pickens*, 35 Ala. 442; *Smiley v. Reese*, 53 Ala. 89. When the executor or administrator is an attorney or solicitor, and in either capacity renders professional services, necessary in litigation for the benefit, or demanded by the necessities of the estate, he is entitled to compensation for such services. In such a case, the rule is not to allow him the usual professional charges for such service, but a compensation fixed and determined by the inquiry, what is fair and reasonable in view of all the circumstances of the estate.—*Harris v. Martin*, 9 Ala. 895; *Teague v. Corbitt*, 57 Ala. 529; *Bendall v. Bendall*, 24 Ala. 295.

4. The opinion of the chancellor declares fees allowed to the administrator for filing petitions for the sales of lands, and for filing reports of insolvency, were extravagant, and ought to be reduced. It does not appear that these fees were objected to before the register, or any exception taken to their allowance. Nor is there any evidence, upon which to base any opinion as to whether the fees are extravagant or not. Of course, neither the register, nor the chancellor, had any judicial knowledge of the value of the services rendered by counsel in these proceedings; and if objection had been made, evidence upon this point would have been introduced. Objection not having been made, if there was ground for objection, the parties in interest waived it, and it was erroneous in the chancellor to make it for them, and to sustain it, without affording the administrator the opportunity to prove that the fees were just and reasonable.

5. The present suit was, as the chancellor declared when he assumed jurisdiction, a necessity, resulting not only from the fact that the trusts of the several administrations were united in one person, but from the connection existing between them, and the impossibility of settling finally any one, until all were settled. The administrator was, consequently, entitled to an allowance for reasonable counsel fees for the suit. What are reasonable fees, depends upon the evidence, and that fully sustains the report of the register. The exceptions to the report, on this point, were not well taken, and ought to have been overruled.—1 Brick. Dig. 979, §§ 924–49.

6. The general rule in a court of equity is, that, in the absence of special circumstances, an executor or administrator is not chargeable with interest during the period allowed him by law for getting in the assets, ascertaining the condition of the estate, and settling his accounts. The use of the money during

that period would be a breach of duty, rendering him liable for interest; and if he received interest, he must account for it, because he could not be permitted to derive individual profit from the funds in his possession. After that period, if for an unreasonable time he retained the money, he was chargeable with interest, because such retention was, in itself, a breach of duty, involving a loss of the use of the money to those who were entitled to receive it. But, if there were circumstances rendering it unsafe, or injudicious, for him to proceed to a settlement of his administration, and to a distribution of the assets—if there were suits pending, or there was just reason to anticipate suits would be commenced; or any other necessity, upon which in good faith he acted in keeping the money, he was not made liable for interest. The whole inquiry was, whether he had performed or neglected duty.—1 Amer. Lead. Cases (4th ed.) 522–25; 2 Lomax Exr's, 557; 2 Redf. Wills, 881–82. Unlike a guardian, or other trustee, whose duty it is to make interest, and who is, therefore, *prima facie* chargeable with it, the executor or administrator is not charged with that duty, and has not, ordinarily, powers which will enable him to make interest. His whole duty is performed, if he keeps safely the funds coming to his hands, not appropriating them to his own uses, or deriving profit from the use of them, and accounting for them properly in the due and regular course of administration as prescribed by law, involving others in no loss by unreasonable delay in the settlement of his accounts.

The statute (Code of 1876, § 2520), as it has been construed, modifies this rule of a court of equity. It reads: "If any executor, or administrator, uses the funds of the estate for his own benefit, he is accountable for any profit made thereon, or legal interest; and in making their returns, they must state the sum so used, the time and profit of the same, if over legal interest; or must expressly deny, on oath, that they have used such funds; and any party interested may contest the same." The construction put upon this statute is, that *prima facie* an executor or administrator is chargeable with interest, though with the utmost diligence he may proceed in the administration to a final settlement. He is chargeable, not because it is a duty to invest or to make interest, but because of the presumption, that he has used the money, when by his own oath he does not repel it.—*Brazeale v. Brazeale,* 9 Ala. 491; *King v. Cabaniss,* 12 Ala. 598; 1 Brick. Dig. 977, §§ 891–900. It is in this respect, subjecting the executor or administrator to a *prima facie* liability for the payment of interest on all moneys received, unless by his own oath he discharges himself, that the statute modifies the rule previously prevailing in courts of equity. For interest received, or profit derived, he is liable by

[Clark v. Knox.]

the terms of the statute; and if he uses the funds, he is, in any event, liable for legal interest, because the use is, of itself, a conversion—a breach of duty. When employed, the profits derived he is required to disclose, and the parties interested may elect to take either the profits or interest at the legal rate. The statute, it is true, is a part of the system by which settlements in the Court of Probate are regulated; but it is the settled doctrine, that when a court of equity assumes jurisdiction of an administration, while it may adhere to its own modes of procedure, it will apply the law regulating the settlement of administrations in the Court of Probate.—*Taliaferro v. Brown,* 11 Ala. 702.; *Wilson v. Crook,* 17 Ala. 59; *Hall v. Wilson,* 14 Ala. 295.

In this case, the administrator made the statutory affidavit, in reference to the use of the moneys coming to his hands; and it was uncontroverted. When, without unreasonable delay, an administrator or executor proceeds to a final settlement, and on oath denies having used the funds or moneys received by him, and the oath is not controverted, it is the mandate of the statute, that he shall not be charged with interest. The court has no discretion, and all inquiry into his liability is foreclosed.—*Mc-Creliss v. Hinkle,* 17 Ala. 459. This is, however, the extent of the operation of the statute. It was not intended to shield the executor or administrator from liability for negligence in delaying the final settlement of an administration; or for indefinitely, of his own volition, keeping moneys dead in his hands, while debts were bearing interest, which ought to have been paid, or the next of kin, or legatees, were suffering loss because deprived of the use of money to which in good conscience they were entitled.—*Pearson v. Durrington,* 32 Ala. 227; *Powell v. Powell,* 10 Ala. 900.

The statutory system of administrations is intended to promote a speedy settlement and distribution of the estates of the dead. Eighteen months is allowed to all persons, having claims against the estate, to present them to the personal representative; and during that period he can not be compelled to a final settlement and distribution. When that period expires, if there be not some special circumstance rendering it unsafe, or injudicious, he ought to proceed to a settlement. If, without necessity, he fails within a reasonable time to proceed to a settlement, though he may have kept the moneys safely, not using them, he should be charged with interest. The statutes contemplates that he shall be the actor in the proceedings for a final settlement. He can not excuse himself for delay, because the parties in interest may not resort to compulsory proceedings against him. A resort to these proceedings is contemplated by the statutes only when he is in default—when he has not observed

[Clark v. Knox.]

the diligence required of him, and initiated the proper proceedings for a final settlement. Whenever the insolvency of the estate is ascertained—or, to follow the words statute, *whenever* *the executor or administrator of any estate is satisfied that the* *property of the estate is insufficient to pay its debts*—it is his duty to report the fact to the Court of Probate, and institute the appropriate proceedings to cause it to be declared and settled as insolvent. The insufficiency of the estate for the payment of debts may be apparent, before the period for the presentment of claims expires; and if it is, the personal representative is not keeping within the line of duty, if he does not take the steps necessary to cause it to be declared and settled as insolvent. If, by a neglect of the duty, interest accumulates on the debts, and creditors are deferred in receiving their just proportion of the assets, the loss should fall upon the personal representative, whose neglect of duty causes it. It is not an answer, that he has kept the moneys safely, not having used them. That is an answer, only when he is diligent in the observance of duty—it is not an excuse for laches in the performance of duty.

We repeat, the purpose of the statute, defining the liability of an executor or administrator for interest, is simply to afford an immediate mode of ascertaining whether, during the period allowed him by law for keeping the moneys, he has used, or derived profit from the use of them. When he has not used, or derived profit from their use, during that period, there can be no charge of interest against him, unless the duty of making interest was cast upon him. But, when that period elapses, and he delays settlement without necessity, he must be charged with interest, whether he had used the money or not. The charge is made, not because of the use of the money, but because, in neglect of duty, he has kept it from them to whom of right it belonged.—2 Lomax Ex'rs, 558.

7. What will constitute unseasonable delay in making a settlement, rendering the executor or administrator liable for interest, must depend upon the particular facts and circumstances of each case. The inquiry is, whether, in view of these facts and circumstances, a prudent man, dealing with his own funds, for his own interest, would have retained the money unproductive, or would have appropriated it as it was *prima facie* to be appropriated. The pendency, or the just anticipation of suits, which, if the event of them was unfavorable, would seriously diminish the assets, complicating the accounts if there was a distribution, may be a good reason for delaying the settlement, and, during the period of reasonable delay, may justify keeping the moneys without a liability for interest; or, if the amounts involved in such suits are not large, compared with

the assets, the keeping without a charge for interest of a sum sufficient to answer the judgments which may be rendered in them. Or, it may be, that a part only of the assets has been reduced to money, leaving, without fault of the personal representative, a part uncollected, and it would not be prudent to subject the estate to the costs of a partial settlement and distribution. These, and other causes developed by the particular facts of the case, may excuse a delay in making settlement, and relieve from liability for interest. But, when no circumstances exist, justifying the retention of the money unproductive, the personal representative must answer for interest. Diligence in making settlements, and accounting to those entitled to receive it, for the money received, is as high a duty, as imperatively demanded by law, as diligence in the collection, or in reducing to money by appropriate proceedings, when a legal necessity exists for the reduction of the property, real or personal, subject to administration.

In the present case, the chancellor allowed the administrator the full period prescribed by law for making settlements, and paying over the moneys received by him, not computing interest for that period. There were no circumstances shown which required, or could justify, the administrator in retaining the moneys for a longer period. The exigencies of the administrations did not require it, and he could have accounted for them as safely at the expiration of that period, as when the present suit was instituted. That he had made no use of the moneys—had not mingled them with his own funds, so that their identity was lost—that they were at all times capable of being distinguished as trust funds—while it relieves him from liability for interest during the period it was within his duty to keep them, does not relieve for a longer period, and during the unnecessary and unreasonable delay in making settlements, and accounting for them. When a settlement is delayed, beyond the period at which it is intended by the statutes that it should be made, if there be facts justifying the delay and retaining the money, the burden of proving them must rest on the executor or administrator. He seeks relief from a clear legal liability, and is excusing the failure to perform a clear legal duty.

8. The only party assigning as error the refusal of the chancellor to charge the administrator with interest, from an earlier period than that fixed, is the administrator of Amelia E. McWhorter. An answer to the assignment is, that though he filed exceptions to the reports of the register, it does not appear that on the reference he insisted upon the liability of the administrator for interest. That liability, on the reference before the register, was claimed only by the respective admin-

istrators *ad litem.* Exceptions must be founded on objections allowed or overruled by the register. On a hearing of the exceptions, there is nothing before the court properly, except the objections made by the party excepting, which were overruled, or the objections allowed against him without his assent. All objections, not made or insisted upon before the register, must be considered as waived, or abandoned.—2 Dan. Ch. Pr. 1321 (*n.* 1); *Gordon v. Lewis,* 2 Sumner, 143; *Lewis v. Lewis,* Minor, 35.

9. The statute (Code of 1876, § 2446) clothes an executor, or administrator, with the power to rent, publicly or privately, the lands of the testator, or the intestate. The power involves the duty, and if there is neglect to exercise it, he is answerable for the loss resulting, as he is for loss from the neglect of any other duty with which he is charged.—*Pearson v. Darrington,* 32 Ala. 227; *James v. Faulk,* 54 Ala. 184; *Benagh v. Turrentine,* 60 Ala. 557. When it is an ascertained fact, that it will be necessary to resort to the lands for the payment of debts, it is a duty the personal representative must be diligent in performing, to intercept the descent or devise of the lands, and to rent them until a sale can be made. The widow, free from the payment of rent, can retain, until dower is assigned to her, the dwelling-house where her husband most usually resided next before his death, with the offices and buildings appurtenant thereto, and the plantation connected therewith. Code of 1876, § 2238. But the personal representative may intervene, and compel an assignment of dower to her.—Code of 1876, § 2239. He is clothed with power over lands, principally because they are made liable for the payment of debts, and to facilitate their application for that purpose. As to the lands, when he resorts to them for the payment of debts, he is rather the representative of creditors, and the adversary of heirs, or devisees, or of the widow claiming to retain them until dower is assigned.—*Bond v. Smith,* 2 Ala. 660; *Benagh v. Turrentine,* 60 Ala. 557. Within a reasonable time after ascertaining that he must resort to the lands for the payment of debts, he must compel an assignment of dower to the widow; and if he fails, permitting her to retain possession of them free from rent, he must bear the loss resulting.

In *Benagh v. Turrentine, supra,* the widow was the administratrix, and it was held that neglect of duty could not be imputed to her, for failing to cause her dower to be assigned, until after the lapse of the period for the presentment of claims; to which six months must be added, for instituting and prosecuting the proceedings to a decree and assignment. That was the case of an original administration of a solvent estate. What is a reasonable time, within which the personal representative

should institute the proceedings, it was said, *must depend some-what on the known condition of the estate.* Whenever it is known to the personal representative that it is necessary to subject the lands to the payment of debts, there can be no reason for delaying proceedings for the assignment of dower, that the possessory right of the widow may be terminated, and the rents and profits taken for the benefit of creditors.

The chancellor decreed, that the administrator should be charged with rents of the lands of his intestate, Samuel A. Wilson, from and after the 1st day of January, 1869. The grant of administration was *de bonis non*, and made in 1866; more than twelve months of the period allowed for the presentment of claims having expired during the preceding administration. More than two years after the grant of administration had elapsed before the administrator is charged with rents, and he had in the *interim* reported the estate as insolvent. The widow was in possession of the lands, and could rightfully retain possession, free of rent, until her dower was assigned. It was the duty of the administrator to cause the assignment to be made, and a neglect of the duty rendered him liable for the rents which could have been derived. The decree of the chancellor is not very explicit. It is uncertain whether it was intended to charge the administrator with the entire rents, or with only two-thirds thereof, during the life of the widow. The latter is all with which he is justly chargeable, while she was in life; and the charge for rents of such of the lands as were sold under the decree of the Court of Probate should cease from the time of the sale. If this be the proper construction of the decree, we think it is free from error.

Neglect of duty ought not lightly to be imputed to any trustee, and loss cast upon him, when he derives no gain, and has not sought to derive any. There is always much of difficulty in determining what is a reasonable time, within which he should act. We know of no safe rule, except that which we have already stated; and that, it must be admitted, is not very definite : what would have been the course of a prudent man, transacting his own business, looking to his own interests, in view of the particular circumstances. Looking to these, we are not prepared to say the chancellor erred in not charging the administrator with rents from an earlier period. The times were troublous; men's minds were unsettled; the political *status* of the State was undefined; governments were being inaugurated in one year, to be destroyed the next; and the prompt action of days of peace and quiet could not be expected, or exacted. The solvency of Wilson's estate depended on the validity of the claim preferred by the administrator of C. H. H. Knox, the consideration of which was the purchase-

money of slaves. Many entertained grave doubts of the validity of such claims, which were not removed until the decision of this court at the January term, 1870.—*McElwaine v. Mudd*, 44 Ala. 48.

We can not say the chancellor erred in ruling that the administrator should be charged with rents which could have been realized from and after the first day of January, 1869. The charge should be of the value of two-thirds of the rents during the life of the widow ; and it should extend only to the sale of the lands for such as were sold by the administrator. The sale carried to the purchaser the rents accruing, and with these the administrator can not be charged.—*English v. Key*, 39 Ala. 113.

In reference to the charge for the rents of the lands of James M. Knox, there does not appear to have been any motion made before the register to make such charge; and none having been made, it was error to direct the register, in re-stating the account, to introduce the charge. Nor was there any motion made before the register to charge the administrator of Jane Knox with the rents of lands. The exceptions taken, in reference to a failure or refusal to make the charge, are, consequently, without foundation, and were, for this reason, properly overruled. Nor does it appear that there was any motion to charge him with the Hamlet judgment; and there can be no inquiry now, whether he should be charged with a larger sum than was charged by the register.

11. If the administrator in chief of Calhoun H. K. Knox made sale of the personal property, which was by the statute exempt to the widow, free from administration, it was a tort, for which he is personally liable.—*Carter v. Hinkle*, 13 Ala. 529. But the tort did not create any liability, which could be fixed on the assets in the hands of the administrator *de bonis non*. It was erroneous to decree that the present administrator should account for the value of such property, or the sums for which it may have been sold by the preceding administrator; unless, perhaps, it had been shown that he had accounted to the administrator *de bonis non* for such moneys.

12. There was no error in overruling the objections of the administrator *ad litem* of Wilson, to the validity of the claim filed by the administrator of C. H. H. Knox. The allowance of a claim, duly filed against an insolvent estate, is a matter of right the statute secures to the creditor, unless objections, directed to its validity or justness, are filed within twelve months after the declaration of insolvency.—*Thames v. Herbert*, 60 Ala. 340; *Thornton v. Moore, Ib.* 347.

We have considered all matters presented by the assignment

[Clark v. Knox.]

of errors; but we do not deem it necessary to notice specially any others than such as are herein considered.

The decree of the chancellor is reversed, and the cause remanded, that there may be a reference to the register, to re-state the accounts, charging the appellant, Clark, as administrator of Samuel A. Wilson, with interest and rents as herein indicated, and allowing him interest on his disbursements for the same time with which he is charged interest; and charging him with interest as administrator of Jane Knox and James M. Knox, as herein indicated, and allowing him interest on his disbursements during the same period with which he is charged interest. And the appellant will be allowed commissions, as fixed by the statute, on the amounts as shown in the re-stated accounts. The costs of these appeals must be paid as follows: one-fourth by the appellant, Clark, individually; one-fourth by Mobley, as administrator of Amelia E. McWhorter; one-fourth by Clark, as administrator of Samuel E. Wilson, and one-fourth by him as administrator of Jane Knox and James M. Knox,; the said administrators to be reimbursed such costs from the assets in their hands to be administered.

STONE, J.—In the opinion of our brother, the Chief-Justice, is this language: "Exceptions [to the register's report] must be founded on objections allowed or overruled by the register. * * All objections, not made or insisted upon before the register, must be considered as waived or abandoned." This was, no doubt, the English rule, and, for a long time, was regarded as the rule in this State. But, under our rules of practice, the majority of the court think our brother states the rule too broadly. Rules 92 and 93 of Chancery Practice (Code of 1876, p. 174) have very materially modified the English rule. Rule 92 declares, that "No notice to the parties to bring in objections to the draft of a report shall be necessary, nor can any exceptions be taken before the register to such draft; nor shall any exceptions to a report be referred to the register; but the same shall be heard and decided in the first instance by the chancellor or court." Rule 89 prescribes the manner in which testimony shall be taken before the register; that it shall be reduced to writing, paged, &c., and declares it becomes part of the file. This rule (89) provides for an exception before the register. It is when there are "exceptions to his rulings on testimony, admitted or rejected by him." These he must note, and if the exception is not then taken, it is waived. Rule 93 prescribes how exceptions are to be taken in the Chancery Court, and in what manner testimony, to sustain or defeat the exception, is to be brought before the court. All this is done before the court, and not before the register.

40

[Grimball v. Patton.]

We will not say that there may not be cases, in which, to sustain an exception before the chancellor, the record must affirmatively show action taken, or motion made by counsel, before the register. A failure to take proof, or to act on a matter not specially referred to him in the decretal order, or instructions, would present such a case. It is not the duty of the register to procure or present proof; counsel must do that. A failure to institute an inquiry, or to hear testimony on a question not expressly, or by necessary implication, referred to him, would present no ground for an exception, unless the inquiry was pertinent and material, and the register was put in fault by refusing to hear such testimony when offered, or to consider such question when moved thereto. And a party, seeking to except on such ground, must have the record show he made the necessary motion in the premises. The court never presumes error, but requires it to be shown.

When, however, the register's report, or the testimony, one or both, show that he has disobeyed the mandate of the decretal order, or chancellor's instructions, or that he has otherwise committed some positive error of law or of fact, it is not necessary that any motion or exception should be made or taken before him, or that he shall be notified an exception will be taken. A day is allowed, after the report is read in court, for filing exceptions to it; and it is not necessary that any one shall have earlier notice of the intention to except to it.—Rule 94 of Chancery Practice. See *Harbin v. Bell*, 54 Ala. 389; *Moore v. Randolph's Adm'r*, at the present term. We therefore hold that the rule is stated too broadly in the opinion of the Chief-Justice, and the rule herein stated is the true one under our rules of practice.